STATE OF NORTH CAROLINA v. JAMES W. SMITH
No. 6922SC372

(Filed 13 August 1969)

1. Criminal Law § 85— evidence of defendant's character — prior indictment — admissibility

   Where defendant took the stand and testified in his own behalf, but solicitor did not elect to cross-examine him concerning a previous indict-

ment charging him with assault on a female, it was error to permit solicitor thereafter to question defendant's character witnesses as to whether they were aware that defendant had been previously indicted.

**.2. Assault and Battery § 14— felonious assault — evidence of serious injury — nonsuit**

In a prosecution for assault with a deadly weapon with intent to kill inflicting serious injuries not resulting in death, State's evidence that a tire tool wielded by defendant struck the victim a glancing blow on the head and that the victim had swollen areas about the back part of his skull, *held* sufficient to be submitted to the jury on the question of serious injury.

APPEAL by defendant from *McConnell, J.,* 3 February 1969 Session, IREDELL Superior Court.

Defendant was charged in a bill of indictment with the felony of assault with a deadly weapon (to wit: his feet and a tire tool) with intent to kill, inflicting serious injuries not resulting in death upon one Robert Ebert. Defendant pleaded not guilty to the bill of indictment.

Evidence for the State tended to show that on 7 April 1968, at approximately 9:00 or 9:30 p.m., Robert Ebert, the prosecuting witness, drove into the parking lot of his apartment and saw the defendant standing facing the door to his apartment; that defendant walked towards Ebert's car and as Ebert spoke to defendant and extended his hand, defendant pulled a tire tool from behind him, raised it up, charged at Ebert, and said, "I am going to kill you;" that defendant struck Ebert with the tire tool a glancing blow on the back of his head, on the shoulder of his neck, and the neck muscles; that Ebert was dazed, dizzy, and fell while holding onto the tire tool; that when he fell to the ground, defendant started hitting him in the face with his fist, kicking, and stomping him with his feet while screaming, "I'm going to kill you; I'm going to kill you; I'm going to disfigure your face;" cursing and saying, "I'm going to fix your face so she won't like it;" that defendant continued to kick and stomp Ebert, occasionally stopping, then starting again, for a period of fifteen to twenty minutes; and that Ebert sustained injuries to his head, face, arms, ribs and spine. His right cheek bone was caved in, his face was swollen, his right eye was shut; there was a laceration on his lower lip; there were swollen areas about his skull, particularly the back part; there was pain in his chest and in breathing and he was tender over the dorsal spine; he required surgery on his face, seven days hospitalization, and had medical expenses of $1,065.14.

Defendant's evidence tended to show that at the time of this incident Ebert had been dating defendant's fiancee and had just spent a weekend with her; that he went to Ebert's apartment to get his fiancee; that he had a tire tool to break into the apartment if necessary; and that Ebert angered him by making derogatory statements about his fiancee, as a result of which he slapped Ebert and a fight ensued. Defendant denied hitting Ebert with the tire tool or kicking him.

The jury returned a verdict of guilty of felonious assault, upon which verdict the court entered judgment sentencing defendant to a term of three to seven years, suspended for a period of three years on the condition that defendant be placed on probation and pay a fine of $1,500.00. From this verdict and judgment defendant appealed.

*Robert Morgan, Attorney General, by James F. Bullock, Deputy Attorney General, for the State.*

*Bennett, Kelly & Long, by George W. Hendon, for defendant appellant.*

BROCK, J.
**[1]** Defendant assigns as error that the trial court allowed the State to cross-examine defendant's character witnesses as to whether they were aware of a previous indictment against defendant for assault. At the trial defendant took the stand and testified in his own behalf. The defendant then availed himself of his right to introduce evidence of his own good character by calling witnesses to testify. After they testified as to the defendant's good character, the solicitor was permitted to ask each witness the following question, over defendant's objection: "Were you aware when you testified as to his character of the fact that he had been indicted for assault on a female?"

Defendant testified in his own behalf before he offered his character witnesses; but, for some reason not apparent from the record, the solicitor did not elect to ask the defendant about an indictment for assault on a female. Such cross-examination would have been proper if fairly done; *State v. Brown,* 266 N.C. 55, 145 S.E. 2d 297; and defendant's answer would have been binding on the State. 2 Strong, N.C. Index 2d, Criminal Law, § 86, p. 606. Had defendant denied that he had ever been so indicted, certainly the State could not have pursued the inquiry through other witnesses. 2 Strong, N.C. Index 2d, *supra.* Having elected not to cross-examine the de-

fendant and give him the opportunity to admit or deny such an indictment, the State could not go into the question of specific acts of misconduct through defendant's character witness.

> "Ordinarily where a defendant introduces evidence of his good character it is error to permit the State to cross-examine the character witness as to particular acts of misconduct on the part of the defendant. Neither is it permissible for the State to introduce other evidence of such misconduct. Under such circumstances, however, the State is permitted to introduce evidence of the defendant's bad character. (Citing cases.)

> "The above rule is subject to certain exceptions, among them being where a defendant goes upon the stand and admits certain specific acts of misconduct, as the defendant did in the trial below, and then introduces evidence of his good character, the State has the right to cross-examine such character witness regarding the admitted acts of misconduct in order to ascertain his conception of what constitutes good character. (Citing cases.)" State v. Church, 229 N.C. 718, 51 S.E. 2d 345.

[2]    Defendant next argues that the trial court erred in denying defendant's motions for nonsuit as to the felony charge because of the absence of any proof that the deadly weapon (the tire tool) inflicted any serious injury. However, the State's evidence tended to show that as defendant approached Ebert he reached from behind his body and pulled out a tire tool, held it up in the air, charged at Ebert and brought the tire tool down. Ebert reached up and grabbed it at the same time. The tool came down and hit him a glancing blow on the head and stopped in his shoulder, at which point he became dazed and dizzy. The State's evidence further tended to show that Mr. Ebert had swollen areas about the back part of his skull. It is manifestly evident that a blow on the head with a tire tool might cause serious injury. Whether it did or did not must be determined from the facts of the particular case and is a question the jury must answer under proper instructions. State v. Jones, 258 N.C. 89, 128 S.E. 2d 1.

We have not overlooked defendant's assignments of error to the charge of the court to the jury. These assignments of error seem to have some merit, but under the circumstances we feel they will not reoccur upon a new trial.

New trial.

CAMPBELL and MORRIS, JJ., concur.