STATE OF NORTH CAROLINA v. RONNIE KEITH COLE

No. 7625SC589

(Filed 15 December 1976)

1. Homicide § 19— evidence of deceased's violent nature — exclusion proper

The trial court in a homicide prosecution did not err in allowing the State's motion to strike testimony by defendant's wife concerning a specific act of violence by deceased one year before the homicide, since there was no other evidence tending to show that the killing was in self-defense at the time the testimony was offered, there was no evidence to indicate that defendant knew of the incident about which his wife testified, and the State's evidence was not wholly circumstantial and did not leave the nature of the transaction in doubt; moreover, defendant was not prejudiced by the exclusion of such evidence since his wife subsequently testified without objection concerning deceased's violent threats and defendant's knowledge of them.

2. Criminal Law § 85— character witness — defendant's prior misconduct — questions improper

As a general rule, a character witness in a criminal trial may not be asked on cross-examination whether he has heard of particular acts of misconduct by the defendant, nor may he be asked whether he would consider someone guilty of such specific acts of misconduct to be a person of good character.

3. Criminal Law § 169— character witness — questions about defendant's prior convictions — harmless error

Where defendant had previously taken the stand in his own behalf and the evidence of his prior convictions was already properly before the jury, the subsequent use of such convictions for impeach-

ment purposes of defendant's character witness constituted harmless error.

**4. Homicide § 28— requested instruction on deceased's violent nature — failure to give not reversible error**

In a homicide prosecution the trial court's failure to instruct the jury as requested on the bearing that the violent character of deceased known to defendant might have had on defendant's conduct did not, standing alone, constitute reversible error, especially since the trial judge otherwise fully charged on the issue of self-defense.

APPEAL by defendant from *Briggs, Judge.* Judgment entered 11 December 1975 in Superior Court, CATAWBA County. Heard in the Court of Appeals 7 December 1976.

Defendant was indicted for first-degree murder, but the State elected to try him for murder in the second degree. Defendant entered a plea of not guilty and was convicted by a jury of voluntary manslaughter. He was sentenced to imprisonment for a term of 16 years.

At trial, the State introduced evidence which tended to show that defendant and his wife lived in an apartment next to that of deceased Virgil Holdren and his wife. On 17 May 1975, defendant's wife and Holdren began to quarrel and continued to do so for approximately ten minutes. Defendant instructed his wife to stop the dispute, but his wife and Holdren carried on their argument. Defendant then got into a fist fight with Holdren, after which defendant left to go to his nearby car. Defendant entered his car, but Holdren followed him and the controversy continued. Defendant jumped out of the car and began striking Holdren. Holdren fell to the ground and defendant straddled him while stabbing him at least six or seven times. Medical testimony indicated that Holdren suffered from five stab wounds plus three cuts on his neck and one on his face. He died from a puncture wound in the left side of his chest which pierced the heart. Other testimony revealed that no weapons used by either defendant or Holdren were located at the scene of the incident, although the investigating policeman found a small pocketknife among the personal effects of the deceased.

Defendant testified in his own behalf, *inter alia,* that he and Holdren argued on 17 May 1975 concerning defendant's rent payments; that when Holdren followed defendant to his car, he threatened to kill defendant and his wife; that Holdren

grabbed defendant by his hair and started the altercation by the street; that Holdren first pulled out a knife, whereupon defendant responded by producing his own knife; that he did not remember stabbing Holdren, but did not deny doing so; and that after the fight he took both knives but does not remember what he did with them.

Other relevant facts are set out in the opinion below.

*Attorney General Edmisten, by Special Deputy Attorney General Myron C. Banks, for the State.*

*Tate and Young, by Dwight Bartlett, for defendant appellant.*

MORRIS, Judge.

[1] Defendant called his wife to the stand to testify in his behalf and attempted to question her regarding the deceased's allegedly violent tendencies. The State interposed several objections, some of which were sustained. Defendant's exceptions in the record, however, relate solely to one question. Defense counsel asked the witness, "What specific action of violence did you observe at this time, approximately one year ago?", to which the witness responded, "The night the man held a knife against his girl friend's throat and threatened to kill her and wouldn't let her . . . " At this point, the State objected and moved to strike, whereupon the court sustained the objection and allowed the motion. Defendant contends that he should have been able to show the violent character of the deceased and that the exclusion of this testimony constitutes prejudicial error. We disagree.

The rule in North Carolina regarding admission of character evidence of the deceased in a homicide case has been stated as follows:

" . . . In a prosecution for homicide, where there is other evidence tending to show that the killing was in self-defense, evidence of the character of the deceased as a violent and dangerous fighting man is admissible if (1) such character was known to the accused *or* (2) the evidence is wholly circumstantial or the nature of the transaction is in doubt." 1 Stansbury, N. C. Evidence, § 106, p. 330 (Brandis Rev. 1973).

We fail to see how the rule applies in this case to permit the stricken testimony. At the time the question was asked, there was no "other evidence tending to show that the killing was in self-defense." Furthermore, there was no evidence to indicate that defendant knew of the incident, and the State's evidence is not "wholly circumstantial" and does not leave the nature of the transaction in doubt.

Even assuming, *arguendo*, that the evidence should not have been excluded, the record reveals that defendant's wife subsequently testified on redirect examination that deceased had "threatened to kill my husband and come after me and my baby. . . . [M]y husband heard this threat." This testimony was allowed without objection by the State. Thus, it appears that defendant was nevertheless able to introduce evidence regarding the deceased's violent threats and defendant's knowledge of them. The exclusion of testimony is not prejudicial when the information sought is provided in other parts of the testimony. *State v. Goodson*, 18 N.C. App. 330, 196 S.E. 2d 531 (1973). This assignment of error is overruled.

Defendant later called his father to testify as a character witness in his behalf. His father stated he knew defendant's "general character and reputation in the community in which he lived, and it was good." On cross-examination, the district attorney asked defendant's father, over objection, whether he knew that defendant had pled guilty to previous criminal offenses. Defendant contends that the trial court erred in allowing cross-examination of defendant's father regarding defendant's specific acts of misconduct. We disagree.

[2]   As a general rule, a character witness in a criminal trial may not be asked on cross-examination whether he has heard of particular acts of misconduct by the defendant. *State v. Hunt*, 287 N.C. 360, 215 S.E. 2d 40 (1975) ; *State v. Smith*, 5 N.C. App. 635, 169 S.E. 2d 4 (1969). Also, such a witness may not be asked whether he would consider someone guilty of such specific acts of misconduct to be a person of good character. *State v. Hunt, supra; Woodie v. North Wilkesboro*, 159 N.C. 353, 74 S.E. 924 (1912). The reason for the rules is that such questions are likely to be taken by the jury, not for the purpose of testing the witness' estimate of character, but rather as evidence of the misconduct itself. See 1 Stansbury, N. C. Evidence, § 115, p. 351 (Brandis Rev. 1973).

Here, the record reveals that immediately before defendant's father was called to testify, defendant took the stand in his own behalf. In the State's cross-examination of defendant, he admitted that he had pled guilty to the list of offenses about which his father was questioned. These prior offenses were, of course, appropriate areas for cross-examination of the defendant for impeachment purposes. *State v. Goodson,* 273 N.C. 128, 159 S.E. 2d 310 (1968). Therefore, evidence of defendant's criminal record was already before the jury when defendant's father testified. This varies materially from the situation in *State v. Hunt, supra,* in which the Court noted that:

> "Both counsel and defendant in a criminal case are always faced with a difficult task in deciding whether the accused should testify and be subjected to cross-examination. *Here defendant did not testify.* If defendant had a previous criminal record, that fact, in all probability, strongly influenced his decision to forego his right to testify. *The effect of the prosecutor's questions was to inform the jury that defendant had previously been convicted of other separate and distinct criminal offenses . . .* " 287 N.C. at 376, 215 S.E. 2d at 50. (Emphasis supplied.)

[3] In the case *sub judice,* since defendant had previously chosen to take the stand in his own behalf and the evidence of his prior convictions was already properly before the jury, we believe that the subsequent use of such convictions for impeachment purposes of defendant's character witness constituted harmless error. This assignment is overruled.

[4] Defendant submitted to the judge a list of requested special instructions to the jury. His fifth request was that the court instruct the jury " . . . as to the bearing that the violent character of the deceased known to the Defendant might have had on the Defendant's apprehension, fear and subsequent conduct towards the [deceased]." Defendant now contends that the court erred in failing to submit such instructions, citing *State v. Riddle,* 228 N.C. 251, 45 S.E. 2d 366 (1947). In *Riddle,* the North Carolina Supreme Court held that, in a homicide action in which there is evidence that the deceased was a man of violent character, the failure of the judge to instruct the jury as to the effect that such violent reputation could have on defendant's reasonable apprehension of death or bodily harm constitutes prejudicial error. Here, the trial judge did not spe-

cifically charge as to the effect which Holdren's violent characteristics might have had on defendant's reasonable apprehension of death or substantial bodily injury. However, the judge did otherwise fully charge the jury on the question of self-defense and added that the jury " . . . should consider the circumstances as you find them to have existed from the evidence, *including . . . the reputation, if any, of Virgil Holdren for danger and violence."* (Emphasis supplied.) We do not believe that the judge's failure to instruct the jury as requested, standing alone, constitutes reversible error, especially since the trial judge otherwise fully charged on the issue of self-defense. *State v. Rummage,* 280 N.C. 51, 185 S.E. 2d 221 (1971).

We have reviewed defendant's other assignment of error and find it to be without merit.

No error.

Judges CLARK and ARNOLD concur.