STATE OF NORTH CAROLINA v. TROY LEE ORR

No. 8030SC173

(Filed 16 September 1980)

Criminal Law § 89.1– general reputation in community – insufficient knowledge by witness

 A witness did not have sufficient contact with the community in which the prosecutrix lived to permit him to testify as to the general reputation of the prosecutrix in such community.

APPEAL by defendant from *Friday, Judge.* Judgment entered 25 October 1979, Superior Court, CHEROKEE County. Heard in the Court of Appeals in Waynesville 26 August 1980.

Defendant was indicted for armed robbery, convicted, and sentenced to a prison term. He appeals from the judgment entered.

*Attorney General Edmisten, by Assistant Attorney General Jane Rankin Thompson, for the State.*

*Ronald M. Cowan for defendant appellant.*

MORRIS, Chief Judge.

Evidence for the State and for the defendant was sharply in conflict. The prosecuting witness testified that defendant, who "was supposed to be the husband of her niece, came to her house to repair the roof of her mobile home. He offered to drive her in her jeep to Murphy to pick up some tires. She lived in Tallulah

which is about six miles from Robbinsville. Instead of going to Murphy, he turned off on a dirt road, stopped the jeep, and ordered her to get out. He pulled out a gun, pointed it in her face and threatened to kill her. She recognized the gun as one she kept by her bed. He struck at her face with the gun and hit her arm which she had put up to protect her face, knocking her out of the jeep. He ordered her to walk away without looking back and refused to give her her walker, without which she had difficulty in walking. He left in the jeep in which she had left her pocketbook containing $200 in cash. Also taken were two cassette tape players and two watches. She walked back to the road and got a ride to the Andrews police station where she talked with Kenneth Cope. Mr. Cope testified that she was excited and scared and her clothes were in disarray, and there was a bruise on her left arm. He could not tell that she had been drinking.

Defendant testified that he had been to the home of the prosecuting witness one time prior to the date of the alleged robbery; that on the day of the alleged robbery both he and the prosecuting witness were drinking heavily; that he did not rob her but that she made sexual advances to him and he left her in the jeep and caught a ride to his father's house.

Defendant offered one James D. Brown as a witness in his behalf. He testified that he lived in Robbinsville. Counsel for defendant asked Mr. Brown whether he knew Mrs. Starnes, the prosecuting witness. He replied that he did, in fact, know her and that she was a relative of his; that she lived "right above Bear Creek Junction, on the right hand side;" and that the area was referred to as "the upper end of Tallulah, or something." In response to the question whether he knew other persons living in that area, the witness responded: "I know Roy Dale Peterson, I believe it is; he lives right down the road there on the left, and I think Hugh Lane lives up through there somewhere pretty close." Counsel then asked whether the witness knew "Mrs. Starnes's general character and reputation in the community in which she lives." The court sustained the State's objection and denied defense counsel's request that the witness's answer be put in the record. Defendant excepted to both rulings of the court. These two exceptions are assigned as error and constitute defendant's only assignment of error.

Defendant correctly states that one of the more common methods of impeaching a witness is to show his bad character. The State agrees with this statement but contends that the witness had established that he was not qualified to testify with respect to the general character and reputation of Mrs. Starnes in the community in which she lives.

> "In North Carolina the testimony of a character witness is confined by the general reputation of a person whose character is attacked, or supported, *in the community in which he lives. S. v. Parks*, 25 N.C., 296; *S. v. Perkins*, 66 N.C., 126; *S. v. Gee*, 92 N.C., 756; *S. v. Wheeler*, 104 N.C., 893; *S. v. Coley*, 114 N.C., 879, and numerous other cases since. Reputation is the general opinion, good or bad, held of a person by those of *a community in which he resides*. This is eminently a matter of hearsay, based upon what the witness has heard or learned, not as to any particular acts, but as to the *general opinion or standing in the community.*" (Italics ours.) *S. v. Steen*, 185 N.C., 768, 770. The emphasis upon the word "community" is significant. It is not the reputation of a man among a particular group — such as his associates in church, lodge, or business — which is competent in evidence, it is his reputation generally in the community which is admissible. As stated by *Chief Justice Tilghman* in *Wike v. Lightner*, 11 Ser. & Rawle, at p. 199: "The question is, What is said by people in general? This is the true point of inquiry, and everything which stops short of it is incorrect."

*State v. Smoak*, 213 N.C. 79, 94, 195 S.E. 72, 82 (1938).

In *State v. McEachern*, 283 N.C. 57, 194 S.E. 2d 787 (1973), the Court, through Justice Branch, now Chief Justice, discussed at length the question of the admissibility of evidence of a witness's general character and reputation. There the Court said:

> We are convinced that inquiry into reputation should not be necessarily confined to the residence of the party whose reputation is in question, but should be extended to any community or society in which the person has a well-known

or established reputation. Such reputation must be his *general* reputation, held by an appreciable group of people who have had adequate basis upon which to form their opinion. *Of course, the testifying witness must have sufficient contact with that community or society to qualify him as knowing the general reputation of the person sought to be attacked or supported.* (Emphasis supplied.)

*Id.* at 67.

It appears to us obvious that Mr. Brown had insufficient contact with any community in which Mrs. Starnes might have been known to testify as to what people who had an adequate basis upon which to form their opinion thought about Mrs. Starnes.

The court correctly sustained the State's objection and refused to allow the defendant to have the witness's answer put in the record.

No error.

Judges CLARK and MARTIN (Harry C.) concur.