STATE OF NORTH CAROLINA v. ROGER ERVIN HARRISON

No. 8125SC905

(Filed 16 March 1982)

1. **Homicide § 20.1— photographs of victim's body—properly admitted**
   In a prosecution for second degree murder, five photographs which portrayed various views of the room in which a victim's body was found and the body itself were admissible to illustrate the witness's testimony as to the location, position, and condition of the body at the scene.

2. **Criminal Law § 167; Homicide § 20.1— exclusion of photographs—no argument to show error**
   Under App. R. 28(a), defendant's exceptions to the exclusion of certain photographs were deemed abandoned when he presented no argument to show error in the exclusion.

**3. Homicide § 15.2— admission of opinion concerning defendant's mental state—harmless error**

The admission of a sentence in a witness's written statement which stated "I myself think this traget [sic] thing happened over the love he [defendant] had for this woman" was harmless error in view of all the evidence. G.S. 15A-1443(a).

**4. Homicide § 28— victim's propensity towards violence—instructions concerning**

In a prosecution for second degree murder, where the trial judge, instructing on self-defense, instructed that the jury "should consider the circumstances as you find them to have existed from the evidence, including . . . the reputation, if any of the deceased . . . for danger and violence," the trial court did not commit prejudicial error in failing to give defendant's requested instructions on deceased's previous acts of violence and his reputation for violence when intoxicated.

**5. Homicide § 28.4— self-defense—no duty to retreat—failure to instruct proper**

In a prosecution for second degree murder in which defendant claimed self-defense, where the evidence was insufficient to indicate that defendant was in a place from which he had no duty to retreat, the trial judge did not err in failing to give the requested instruction.

APPEAL by defendant from *Owens, Judge.* Judgment entered 5 February 1981 in Superior Court, BURKE County. Heard in the Court of Appeals 4 February 1982.

Defendant was indicted and convicted of second degree murder. He appeals from a judgment of imprisonment.

*Attorney General Edmisten, by Assistant Attorney General Marilyn R. Rich, for the State.*

*Martin & Poovey, by Mark N. Poovey, for defendant-appellant.*

HILL, Judge.

The State's evidence tended to show that on 29 September 1980, defendant, Edna Davis, Marvin Edwards, Danny Carswell, Steve Huffman, and Larry Roper were present at 111 Tate Street in Morganton. About three or four o'clock that afternoon, all the parties were in the house and drinking liquor. Steve Huffman testified that at one point, he saw defendant in the bathroom, where defendant stated that Roper "was messing with Edna." Huffman then saw defendant pull a knife out of his sock and say, "Larry better leave Edna alone." By dark, Roper had passed out;

he had been irritated and was "picking on Edna." Roper woke up, "started smart mouthing everybody," and passed out again in the living room. When he woke up, Roper grabbed Davis, called her a "slut," swung at her and hit her. Carswell testified that defendant "came in from where he was standing at the other end of the couch and came across, reached over and stabbed Larry Roper in the back," twice.

Defendant's evidence tended to show that his reputation in the community is good and that Roper's reputation in the community was that he was violent when drinking. Defendant testified that Roper woke up about ten o'clock on the evening of 29 September. After Roper called Davis names and hit her, defendant said, "I got up off the couch and Larry took a step towards me like he was going to get me. Larry grabbed me and said, 'I'll throw you in the fireplace.' " Roper went for the knife on the end table, but defendant got it first and stabbed Roper.

[1] Defendant brings forward six arguments which we will address seriatim. In his first argument, defendant contends that the trial judge erred in allowing into evidence five photographs of Roper's body, which were gruesome and excessive, depicting essentially the same scene, thereby inflaming the jurors.

"The rule is that even though photographs may be gory and gruesome, they may nevertheless be used, when properly authenticated, to illustrate a witness' testimony so long as excessive numbers of photographs are not used solely to arouse the passions of the jury and thus deny the defendant a fair trial." *State v. King*, 299 N.C. 707, 710-11, 264 S.E. 2d 40, 43 (1980). *See* 1 Stansbury's N.C. Evidence (Brandis rev. 1973) § 34, p. 93. Where photographs are used to illustrate a witness's testimony "as to the location, position and condition of the body at the scene and regarding the nature and extent of the wounds to the body," they are relevant and material. *State v. King, supra* at 711, 264 S.E. 2d at 43. The photographs are not excessive in number when they portray "somewhat different scenes." *Id. Accord State v. Dollar*, 292 N.C. 344, 233 S.E. 2d 521 (1977).

In the case *sub judice*, the five photographs admitted into evidence portrayed various views of the room in which Roper's body was found and the body itself. One photograph, taken at the morgue, shows the wounds on Roper's body. Thus, under the

rules stated above, the trial judge did not err in allowing into evidence these photographs; they are admissible to illustrate the witness's testimony as to the location, position, and condition of the body at the scene. This assignment of error is overruled.

[2] Defendant's second argument assigns error to the trial judge's restriction of his cross-examination of Officer Ronnie Hudson concerning bloodstains he found in the Tate Street house only to those found on 29 September 1980, excluding bloodstains found at a later date. However, our review of the record reveals the following testimony by Officer Hudson:

> I found blood on the mantle [sic] the night of the stabbing as well as on the mirror. *Some time later I found blood underneath the end table on the molding next to the wall. I did not look behind the sofa for blood the next day. I did not find any blood on the wall on September 29th or 30th.*

(Emphasis added.) This evidence indicates that defendant's cross-examination of Officer Hudson was not restricted, as he argues, to bloodstains found only on 29 September.

Although defendant excepts to the exclusion of certain photographs which purportedly would illustrate the bloodstains found "[s]ome time later," he presents no argument to show error in such exclusion. "Questions raised by assignments of error in appeals from trial tribunals but not then presented and discussed in a party's brief, are deemed abandoned." N.C. App. Proc. Rule 28(a). This assignment of error is overruled.

[3] In his third argument, defendant contends that the trial judge erred in allowing the jury to read a statement written by David Wakefield, a neighbor, which summarized events occurring on the night of 29 September 1980, including a conversation with defendant. The last sentence in this statement contained Wakefield's opinion that "I myself think this traget [sic] thing happened over the love he [defendant] had for this woman — Edna."

By allowing the jury to read the statement in its entirety, without deleting the last sentence, the trial judge improperly admitted the opinion of a lay witness as to the ultimate issue in the case, defendant's mental state at the time of the stabbing. Of course, "[i]t is the province of the jury to decide what inferences

and conclusions are warranted by the testimony. *State v. Peterson*, 225 N.C. 540, 543, 35 S.E. 2d 645, 646 (1945). *See generally*, 1 Stansbury's N.C. Evidence (Brandis rev. 1973) § 126, p. 393.

Nevertheless, in view of all the evidence, this error is harmless. Wakefield's testimony on direct examination suggested that defendant told Wakefield that the killing was done in self-defense. On cross-examination, Wakefield was impeached with his prior inconsistent statement which suggested that defendant told Wakefield that he, defendant, was not defending himself. Considering Wakefield's testimony and other portions of his impeaching statement, we do not believe the last sentence in the statement was prejudicial. Moreover, the facts that defendant had a knife inside his sock and stated that "Larry better leave Edna alone;" that Roper called Davis a "slut;" and that Roper "messed" with Davis as well as struck her, were sufficient to establish defendant's mental state at the time of the stabbing.

In light of this and other compelling evidence, defendant has not persuaded us that the result of this trial would have been different had Wakefield's statement not been shown to the jury. He has not shown prejudicial error as required by G.S. 15A-1443(a). This argument is without merit.

[4] Defendant's fourth and fifth arguments concern the trial judge's failure specifically to charge the jury on Roper's previous acts of violence and his reputation for violence when intoxicated with the judge's charges on self-defense and the defense of others. The trial judge's charges on these issues included the following:

> It is for you, the jury, to determine the reasonableness of the defendant's belief [that it was necessary to kill Roper] from the circumstances as they appeared to him at the time. *In making this determination you should consider the circumstances as you find them to have existed from the evidence, including . . . the reputation, if any, of the deceased, Larry Roper, for danger and violence . . ..*

Emphasis added.)

In *State v. Cole*, 31 N.C. App. 673, 230 S.E. 2d 588 (1976), defendant Cole requested the trial judge to charge the jury as did defendant *sub judice*. The judge did not honor the request, but

fully charged the jury on the question of self-defense and added language identical to that emphasized above. This Court held, "We do not believe that the judge's failure to instruct the jury as requested, standing alone, constitutes reversible error, especially since the trial judge otherwise fully charged on the issue of self-defense." *Id.* at 678, 230 S.E. 2d at 592.

Even so, "[c]onsidering the totality of the evidence presented, and the paucity of evidence tending to show self-defense, we do not believe 'there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial . . ..'" *State v. Powell,* 50 N.C. App. 224, 228, 275 S.E. 2d 528, 531 (1981), *quoting* G.S. 15A-1443(a).

Here, the trial judge fully charged the jury upon the issues of self-defense and defense of others, and there is a "paucity of evidence tending to show self-defense" and defense of others. Under these circumstances, we are bound by *Cole* and *Powell.* These assignments of error therefore are overruled.

[5] In his final argument, defendant assigns as error the trial judge's failure to instruct the jury that "a person upon whom an assault is made is not obligated to retreat when he is assaulted in his dwelling house."

"[A] person is not obliged to retreat when he is assaulted *while in his dwelling house* or within the curtilage thereof, whether the assailant be an intruder or another lawful occupant of the premises." *State v. Browning,* 28 N.C. App. 376, 379, 221 S.E. 2d 375, 377 (1976) (emphasis added). *See State v. Sally,* 233 N.C. 225, 63 S.E. 2d 151 (1951). The evidence *sub judice* shows only that Marvin Edwards, Steve Huffman, and Danny Carswell paid to rent the Tate Street house. Defendant testified that "Steve Huffman invited Edna and me to 111 Tate Street about three or four days before the stabbing took place." This evidence is insufficient to indicate that defendant was in a place from which he had no duty to retreat, "his dwelling house." Thus, the trial judge did not err in failing to give the requested instructions.

For these reasons, we find defendant received a fair trial free of prejudicial error.

No error.

Judges HEDRICK and BECTON concur.