STATE OF NORTH CAROLINA v. CHARLES EDWARD CAUDLE, SR.

No. 8118SC1247

(Filed 6 July 1982)

1. Homicide § 21.8— second degree murder—sufficiency of evidence—defendant's assertion of self-defense

In a prosecution for second degree murder where the state introduced into evidence statements by defendant tending to show that he had gotten a rifle out of the trunk of his car and shot the deceased in self-defense but also introduced evidence which contradicted defendant's statement that he shot the

State v. Caudle

deceased in self-defense, the trial court did not err in denying his motion to dismiss at the end of all the evidence.

2. **Homicide § 19.1— evidence of specific acts of violence by deceased—no error in exclusion where unknown to defendant**

Defendant failed to show error in the exclusion of testimony by one of his witnesses that the witness had once had to shoot the deceased to keep from being cut by him where there was no evidence that defendant knew of the incident between the witness and the deceased and where the defendant himself testified that he had heard the deceased had been shot in a previous incident and presented evidence of the reputation of the deceased as being a violent and dangerous man.

3. **Criminal Law § 85.2— character evidence about defendant—not necessary to limit question to particular community**

In a prosecution for second degree murder where two State's witnesses were asked whether they knew defendant's character and reputation in the community, it was not necessary to limit the question to a particular community since character evidence may be received from one knowledgeable with any community in which defendant has a well-known or established reputation so long as the testifying witness had sufficient contact with the defendant, and both witnesses met the requirements.

4. **Criminal Law § 85.2— testimony concerning specific acts and threats by defendant—admission not error**

The trial court did not err in admitting the statements of a witness showing specific threats and actions by defendant against her and her family where objections to the testimony concerning defendant's alleged actions against her granddaughter were sustained, and where the remaining testimony concerning other threats by defendant against the witness, her son and her mother were volunteered without prompting and were admissible under the rule that a qualified character witness may, on his own volition, state in what respect the character of the person about whom he is testifying is bad.

5. **Homicide § 26— instructions—intoxication—no bearing on guilt or innocence of second degree murder or voluntary manslaughter**

In a prosecution for second degree murder the trial court properly instructed the jury, upon inquiry by them as to whether malice is possible in a person "under the strong influence of alcohol," that voluntary intoxication is generally not a legal excuse for crime and that defendant's intoxication, if any, would have no bearing on their determination of his guilt or innocence of second degree murder or voluntary manslaughter.

6. **Criminal Law § 126.3— judge taking verdict sheet from jury at door of jury room**

G.S. 15A-1237(b), requiring that a verdict be returned by the jury in open court, was not violated when the trial judge took the verdict sheet from the jury at the door of the jury room after being informed that they had reached a verdict and then read the verdict in open court.

APPEAL by defendant from *Rousseau, Judge.* Judgment entered 17 June 1981 in Superior Court, GUILFORD County. Heard in the Court of Appeals 4 May 1982.

Defendant was indicted for the first degree murder of James Douglas Wilkins. He was placed on trial for murder in the second degree and convicted. From a judgment of 40 years imprisonment, defendant appeals.

*Attorney General Edmisten, by Assistant Attorney General Robert L. Hillman, for State.*

*Robert S. Cahoon, for defendant appellant.*

VAUGHN, Judge.

[1] Defendant first assigns error to the denial of his motions to dismiss at the close of State's and all the evidence. Defendant presented evidence at trial following denial of his initial motion to dismiss and thereby waived the right to challenge that denial. G.S. 15-173; *State v. Hough,* 299 N.C. 245, 262 S.E. 2d 268 (1980). Defendant's motion to dismiss made at the close of all the evidence is before this Court for review, and we conclude that denial of that motion was proper.

Defendant contends that the motion should have been allowed because State introduced uncontradicted exculpatory evidence by which it was bound. Defendant relies upon *State v. Tolbert,* 240 N.C. 445, 82 S.E. 2d 201 (1954), where the State introduced declarations by the defendant which presented a complete defense while its evidence *contra* raised only a possibility of guilt. It was held that under such circumstances, the defendant was entitled to acquittal upon his demurrer to the evidence. It was also noted, however, that the State, upon offering evidence of exculpatory declarations of a defendant, is not precluded from showing that the true facts differ from those related by the defendant and that such conflicting evidence is sufficient to overcome a motion to dismiss.

In the present case State did introduce into evidence statements by defendant made at the time of his arrest and shortly thereafter tending to show that he had gotten a rifle out of the trunk of his car and shot the deceased in self-defense after the deceased had hit him in the mouth and threatened to kill him

with a handgun which defendant had inside his car. In addition to this evidence, however, State presented evidence tending to show that the police were called to the scene of the shooting at approximately midnight on 4 May 1980 by several people who had been awakened by loud noises in the park across the street from their houses, had observed defendant's car sitting in the park with one man standing at the open trunk and another sitting inside the car and had heard the man at the trunk yell "Get out of the goddamn car" several times and then heard a gunshot. When police arrived they found defendant crouched beside the body of the deceased which appeared to have been dragged from the passenger seat of the car approximately 30 feet towards a creek. The deceased died of a gunshot wound to the chest. A spent rifle cartridge was found near the right front fender of the car. A rifle with blood on it was found behind the passenger seat, and a handgun was found on the floorboard of the driver's side of the car. Defendant had threatened to kill someone with the handgun earlier in the evening and had bragged about having a rifle in the trunk of the car. After his arrest, defendant made the statement, "That's what he gets for what he did to my mother." This evidence sufficiently contradicts defendant's statement that he shot the deceased in self-defense to merit denial of the motion to dismiss.

[2]  Defendant next assigns error to the exclusion of testimony by one of his witnesses that the witness had once had to shoot the deceased to keep from being cut by him. We agree with defendant that evidence of the character of the deceased as a violent and dangerous fighting man is admissible in a prosecution for homicide where self-defense is claimed. However, evidence of specific acts of violence by the deceased is admissible only when those acts occurred in the presence of the defendant or were known to the defendant prior to the homicide. *State v. Barbour*, 295 N.C. 66, 243 S.E. 2d 380 (1978). There is no evidence in the record that defendant knew of the incident between the witness and the deceased. Even assuming that the evidence should not have been excluded, the record reveals no prejudice to defendant since he testified himself that he had heard that the deceased had been shot in a previous incident and presented evidence of the reputation of the deceased as being a violent and dangerous man. *See State v. Cole*, 31 N.C. App. 673, 230 S.E. 2d 588 (1976).

In assignments of error three and four defendant alleges error in the trial court's admission into evidence of the testimony of two witnesses regarding defendant's character and reputation in the community. State called these witnesses to rebut evidence of his good character presented by defendant. Both witnesses testified that defendant's character and reputation in the community was bad, and one of the witnesses elaborated upon her answer by stating that defendant had threatened to kill her son and her mother, had told her that if she testified against him she would never see her granddaughter again and had recently taken her granddaughter away overnight without telling anyone where he was. Defendant argues that admission of the testimony as to his character and reputation in an unspecified community was error, and that the testimony regarding specific threats and violent acts by him was inadmissible hearsay. We disagree with both arguments.

[3] The procedure for offering evidence on a person's character is well established.

> The rule is, that when an impeaching or sustaining character witness is called, he should first be asked whether he knows the general reputation and character of the witness or party about which he proposes to testify. This is a preliminary qualifying question which should be answered yes or no. If the witness answer it in the negative, he should be stood aside without further examination. If he reply in the affirmative, thus qualifying himself to speak on the subject of *general* reputation and character, counsel may then ask him to state what it is. This he may do categorically, *i.e.*, simply saying that it is good or bad, without more, or he may, of his own volition, but without suggestion from counsel offering the witness, amplify or qualify his testimony, by adding that it is good for certain virtues or bad for certain vices.

*State v. Abernathy*, 295 N.C. 147, 166-67, 244 S.E. 2d 373, 385-86 (1978), *quoting State v. Hicks*, 200 N.C. 539, 157 S.E. 851 (1931). In the present case both witnesses were asked the required "preliminary qualifying question," that is, whether they knew defendant's character and reputation in the community. It was not necessary to limit the question to a particular community since character evidence may be received from one knowledge-

able with "any community or society in which the person has a well-known or established reputation" so long as the testifying witness has had "sufficient contact with that community or society to qualify him as knowing the general reputation of the person sought to be attacked or supported." *State v. McEachern*, 283 N.C. 57, 67, 194 S.E. 2d 787, 793-94 (1973). Here, both witnesses, after testifying that they had known defendant for approximately two years and were related to him by marriage, answered the qualifying question in the affirmative. We hold this foundation to be a sufficient, though minimal, compliance with the requirements for admission of character evidence. *Cf., State v. Orr*, 48 N.C. App. 723, 269 S.E. 2d 727 (1980) (character witness had obviously insufficient contact with any community in which the prosecuting witness might have been known to testify with respect to her general reputation and character). Further, defendant did not attempt to elicit any disqualifying facts by cross-examination or voir dire and did not move to strike the witnesses' testimony as to his general reputation and character.

[4] With regard to admission of the statements showing specific threats and actions by defendant against one of the witnesses and her family, we find no reversible error. The trial court sustained defendant's objections to the testimony concerning his alleged actions against the granddaughter, and defendant did not move to strike that testimony. The remaining testimony concerned alleged threats by defendant against the witness, her son and her mother. The statements were volunteered by the witness without prompting by State and were admissible under the rule that a qualified character witness may, on his own volition, state in what respect the character of the person about whom he is testifying is bad. *State v. King*, 301 N.C. 186, 270 S.E. 2d 98 (1980). These assignments of error are overruled.

[5] In the next assignment of error which defendant brings forward on appeal, he contends that the trial court erred in instructing the jury, upon inquiry by them as to whether malice is possible in a person "under the strong influence of alcohol," that voluntary intoxication is generally not a legal excuse for crime and that defendant's intoxication, if any, could have no bearing on their determination of his guilt or innocence of second degree murder or voluntary manslaughter. We find no error. The trial court correctly summarized the law as it exists in this State.

State v. Piland

*State v. King,* 49 N.C. App. 499, 272 S.E. 2d 26 (1980), *discr. rev. denied,* 302 N.C. 220, 276 S.E. 2d 917 (1981). Moreover, in his own testimony defendant denied being drunk at the time of the shooting.

[6] Defendant next contends that G.S. 15A-1237(b), requiring that a verdict be returned by the jury in open court, was violated when the trial judge took the verdict sheet from the jury at the door of the jury room after being informed that they had reached a verdict. The judge then read the verdict in open court. We fail to perceive any violation of the statute or prejudice to defendant in this procedure. This assignment of error is overruled.

Defendant's final assignment of error is a formal one, asserting error in the denial of his motion to set aside the verdict and in entry of judgment against defendant for the reasons set forth in the preceding assignments of error. For the reasons previously stated, we find no error.

No error.

Judges MARTIN (Robert M.) and ARNOLD concur.