STATE OF NORTH CAROLINA v. MITCH A. TURNER

No. 836SC561

(Filed 7 February 1984)

**1. Criminal Law § 99.5— admonition to defense counsel—no expression of opinion**

Actions by the trial court, including admonitions to defense counsel to "move on," did not indicate any opinion toward defendant's case or any negative attitude toward defense counsel so as to prejudice defendant, but revealed only the trial court's impatience with defense counsel's attempt to rehash previous testimony.

**2. Criminal Law § 99.4— court's sustaining own objection**

The defendant was not prejudiced when the trial court objected to a line of questioning and sustained his own objection where the line of questioning was irrelevant in this particular case.

**3. Criminal Law § 99.2— correction of witness by court—absence of prejudice**

Although the trial court's correction of an undercover agent's testimony that he had "collected" bags of marijuana in his possession by asking whether the agent meant "bought" was improper, it was not prejudicial where the last question asked by defense counsel before this exchange was how many "buys" the agent had made that day.

**4. Criminal Law § 99.2— improper comment by court—absence of prejudice**

In a prosecution for possession and sale of marijuana in which defendant testified that he did not get into an undercover agent's car when he sold marijuana on a certain date, the trial court's improper comment, "I thought he said he did," was not prejudicial to defendant in light of defendant's testimony admitting that he did in fact sell marijuana to the agent on the occasion in question.

**5. Narcotics § 3.1— references to defendant as drug dealer—absence of prejudice**

In a prosecution for possession and sale of marijuana, three references by prosecution witnesses to defendant as a "drug dealer" and a "large drug dealer" were not prejudicial error where the court on each occasion sustained defendant's objection and instructed the jury to strike such reference from their minds; the first two references of this sort were elicited by defense counsel on cross-examination; and defendant lost the benefit of his objections to such references when substantially the same evidence was thereafter admitted without objection.

**6. Criminal Law § 85.2— State's character evidence—reputation of defendant as drug dealer**

The trial court did not err in permitting the State's three rebuttal character witnesses, who stated that they were familiar with defendant's character and reputation in the community, then to state that defendant had the reputation of dealing in drugs without first requiring the witnesses to state whether defendant's character was good or bad.

**7. Criminal Law § 87— witness not on list furnished defendant—allowance of testimony discretionary**

Permitting testimony by a witness whose name was omitted from the list of potential witnesses furnished to defendant prior to trial was a matter within the trial court's discretion.

**8. Criminal Law § 89.3— prior consistent statement—admissibility for corroboration**

An SBI agent's testimony as to what an undercover agent had told him about a purchase of marijuana from defendant was properly admitted to corroborate the undercover agent's testimony even though the undercover agent never testified that he told the SBI agent about the marijuana purchase.

**9. Narcotics § 3.3— qualification of witness to testify about marijuana**

An expert witness in forensic chemistry was sufficiently qualified to testify as to how many nickel bags could be produced from a quarter pound of marijuana, how many marijuana cigarettes could be rolled from this quantity, and how much this quantity of marijuana would be worth on the street where the witness testified that he had identified marijuana over 10,000 times, that he had testified as an expert in drug analysis more than 500 times, that he had gone out on the street and talked to people about how much marijuana is worth and what it sells for, and that he had dealt with a lot of nickel bags of marijuana.

**10. Criminal Law § 7; Narcotics § 3— testimony not relevant to show entrapment**

In a prosecution for possession with intent to sell and sale of marijuana, testimony by defendant that, prior to the time an undercover agent came to his home, he had planned to work that day was not relevant on the issue of whether the criminal intent to sell marijuana originated in defendant's mind and was properly excluded.

**11. Criminal Law § 138.4— two sentences—failure to place defendant on probation for one sentence**

The trial court did not abuse its discretion in failing to suspend the prison term and place defendant on probation for at least one of the two judgments entered against him for possession of marijuana with intent to sell and sale of marijuana. G.S. 15A-1340.4(a).

APPEAL by defendant from *Barefoot, Judge.* Judgments entered 13 January 1983 in Superior Court, NORTHAMPTON County. Heard in the Court of Appeals 10 January 1984.

*Attorney General Edmisten by Special Deputy Attorney General H. A. Cole, Jr., for the State.*

*Johnson, Johnson & Johnson by Bruce C. Johnson and Steven A. Graham for defendant appellant.*

BRASWELL, Judge.

Through an undercover drug investigation conducted by the State Bureau of Investigation (SBI) in Halifax and Northampton Counties, the defendant was arrested and later convicted on Count I for the possession of marijuana with intent to sell and on Count II for the sale of marijuana. The defendant's defense at trial was entrapment. We have carefully reviewed the eight questions presented for our review by the defendant and have found no prejudicial error.

Eugene Bryant is an agent with the SBI who was sent to Northampton County to work undercover with local authorities in a drug investigation in the Spring of 1982. Agent E. H. Cross, Jr., acted as Bryant's supervisor during this operation. The agents were assisted by a man known only as "Raymond" who lived in the Weldon area of Halifax County and who helped set up the first meeting between Bryant and the defendant.

On 22 April 1982, Agent Cross instructed Bryant to pick up Raymond in Weldon. After doing so, Bryant and Raymond drove across the Halifax County line a short distance into Northampton County to the defendant's mobile home. Agent Bryant was dressed in jeans, a regular coat and shirt, was unshaven, and was driving a 1975 Malibu Chevrolet in order to conceal his identity as a policeman. When they arrived at the mobile home, Raymond knocked on the door and the defendant appeared. They did not go inside but conversed at the trailer's door.

Raymond introduced Agent Bryant as "Eugene." Bryant testified that after he had been introduced:

I told Mitch Turner that I was from Elizabeth City and things are dry down there, and do you know where I can get some marijuana? . . . He [the defendant] stated to me at that time that he could get me a quarter pound, which I stated to him I wanted to purchase, and he stated it would be about an hour before he could get that quarter pound.

The defendant drove to Emporia, Virginia, and met with a man named "Slick" at the Dew Drop Cafe who gave him a quarter-pound of marijuana. Then the defendant drove back to North Carolina and went to Raymond's house to sell the marijuana to Agent

Bryant as previously arranged. Bryant paid the defendant $125 for the marijuana which the defendant took. The next day the defendant went back to Emporia and gave Slick the money for the marijuana. Slick, in turn, paid the defendant twenty-five dollars.

On 30 April 1982, at approximately 11:50 a.m., Agent Bryant again contacted the defendant in order to make a second drug buy. It is this particular transaction for which the defendant was subsequently indicted. Bryant went to Turner's Used Car Lot and told an employee there that he wanted to talk with the defendant. Minutes later, the defendant came over to Agent Bryant who told the defendant that he wanted to purchase a quarter-pound of marijuana. The defendant indicated that it would take him about an hour to get the marijuana and for Bryant to meet him at Turner's Grocery.

Agent Bryant went to the grocery store at approximately one o'clock and waited for several minutes. Thinking that the defendant was not going to show up, Agent Bryant left, traveling south on Highway 301 when he met a vehicle being operated by the defendant who motioned for Bryant to pull over. The defendant turned his car around and pulled up behind Bryant who had stopped. The defendant got out of his car and got into Bryant's. He then pulled out from under his coat a plastic bag containing brown vegetable material. Bryant asked if the correct weight was there and the defendant stated that it was. Taking the marijuana, Bryant paid the defendant $125 which the defendant accepted.

The defendant testified that he had gone back to the Dew Drop Cafe and received the marijuana from Slick. After selling the marijuana to Agent Bryant, he drove back to Emporia to give Slick the $125 for the sale and again was paid twenty-five dollars by Slick.

The defendant does not deny that these two sales occurred, but claims that they occurred only after he had been induced by Agent Bryant to commit these crimes. For instance during the 22 April 1982 transaction, the defendant contends that he repeatedly told Bryant that he did not sell marijuana and did not have any. Also, on 30 April 1982, the defendant told Bryant that he did not sell marijuana, but that Agent Bryant "kept on after [him] to go and get him some [marijuana], because he needed some." On each

occasion, the defendant finally agreed to get Bryant some marijuana, but said that he was only doing it as a favor and would not do it again. Although the trial court charged the jury on the defense of entrapment, the jury returned a verdict finding the defendant guilty of possession of marijuana with intent to sell and guilty of the sale of marijuana.

The defendant's first assignment of error asserts that numerous comments and expressions by the trial judge during the trial and in the presence of the jury prejudiced his right to a fair trial. Because the trial judge occupies an exalted position, " 'he must abstain from conduct or language which tends to discredit or prejudice the accused or his cause with the jury.' " *State v. Belk*, 268 N.C. 320, 324, 150 S.E. 2d 481, 484 (1966), *affirmed*, 269 N.C. 725, 153 S.E. 2d 494 (1967), *quoting State v. Carter*, 233 N.C. 581, 583, 65 S.E. 2d 9, 10 (1951). Since impartiality is imperative, it is error for the trial court to express or imply, in the presence of the jury, his opinion in any form whatsoever or to belittle and humiliate counsel which may tend to seriously prejudice the defendant's case in the eyes of the jury. *State v. Frazier*, 278 N.C. 458, 180 S.E. 2d 128 (1971). "It is immaterial how such opinion is expressed or implied, whether in the charge of the court, in the examination of a witness, in the rulings upon objections to evidence or in any other manner." *State v. Freeman*, 280 N.C. 622, 626-27, 187 S.E. 2d 59, 63 (1972).

[1] In the present case, the defendant sets forth several instances in which he feels the trial court by his conduct prejudiced his case. An examination of these instances reveals that the trial court's actions did not indicate any opinion towards the defendant's case or any negative attitude toward defense counsel, but rather revealed the trial court's impatience with defense counsel's attempt to rehash testimony previously asked for and answered. This impatience reflected by trial court's repeated admonishment to defense counsel to "move on" did not constitute prejudicial error because "[i]t is both the right and the duty of the presiding judge to control the examination and cross-examination of witnesses, both for the purpose of conserving the time of the court, and for the purpose of protecting the witness from prolonged and needless examination." *State v. Mansell*, 192 N.C. 20, 24, 133 S.E. 190, 192-93 (1926).

[2] Nevertheless, the trial court must be careful that in the exercise of this duty he does not prevent counsel from effectively examining witnesses on relevant subjects. For example, Agent Bryant had made several marijuana buys on 30 April 1982 when defense counsel attempted to place in the minds of the jurors the possibility that Bryant had commingled the evidence or confused the marijuana from one buy with that of another. The following exchange took place:

> Q. [DEFENSE COUNSEL] And how much marijuana did you have in your own home?
>
> COURT: That's sustained. That doesn't have anything to do with this case. I'll not even sustain that; it doesn't have anything to do with this case.
>
> Q. Did you have several different packages or bags of marijuana in your home?
>
> WITNESS: [Agent Bryant] Do I?
>
> Q. Did you at that time—
>
> MR. BEARD: Objection.
>
> Q. —that you have collected?
>
> A. Yes, sir, I did.
>
> COURT: Bought, you mean; don't you?
>
> EXCEPTION NO. 9.

Although it may appear somewhat inappropriate for the trial court to rule this subject area of cross-examination as irrelevant, we hold that under the defendant's theory of the case his ruling was not error. The defendant admitted that he obtained and sold a quarter-pound of marijuana to Agent Bryant on 30 April 1982. He did not contend that the vegetable material within the plastic bag was not in fact marijuana. Therefore, his line of questioning was irrelevant in this particular drug case and it was appropriate for the trial judge to object and sustain his own objection. *Greer v. Whittington,* 251 N.C. 630, 111 S.E. 2d 912 (1960). In any event, Agent Bryant proceeded to testify to all the safeguards he used in his efforts to keep the evidence separate.

[3]  As to the trial court's correction that Bryant "bought" rather than "collected" the bags of marijuana in his possession, the trial court may have overstepped the bounds of cold neutrality. Although any such step constitutes error and should be guarded against with the greatest caution, we hold that in this particular case and context this comment did not amount to prejudicial error, for the last question by defense counsel preceding this exchange asked Agent Bryant how many "buys" had he made that day. Therefore, the trial court was only clarifying that "buys" are "bought."

[4]  Also, the defendant asserts that the following comment made by the trial court prejudiced the defendant's credibility in the eyes of the jury. On redirect examination, defense counsel asked:

Q. Mr. Turner, when you went to the car on April the thirteenth, did you ever get in the car?

A. No.

COURT: I thought he said he did.

EXCEPTION NO. 29.

[Defendant continues] He, Mr. Bryant, was in the car.

It is true that Agent Bryant's and the defendant's testimony differed as to whether the defendant actually got into Bryant's car when he sold the marijuana on 30 April 1982. Although the trial judge must refrain from such unnecessary comments in the course of a trial, we again fail to see how this comment was prejudicial error in light of his testimony admitting that he did in fact sell marijuana to Bryant on this occasion.

Finally, we hold that even though the defendant asserts eleven instances of this nature where the trial court more wisely should have kept silent, we do not feel that they separately or cumulatively warrant a new trial.

[5]  In his second assignment of error, the defendant contends that three references by State witnesses to defendant as a "drug dealer" and a "large drug dealer" were prejudicial error not cured by the court's instructions. Contrary to the defendant's brief, the first two references of this sort by Agent Bryant were elicited by defense counsel on cross-examination. From the rec-

ord, the answers given by Bryant referring to the defendant as a drug dealer were responsive to his questions. The third reference to the defendant as a "large drug dealer" was made by Agent Cross during direct examination by the prosecutor. Once each of these references to the defendant were made the trial court immediately sustained defense counsel's objections and instructed the jury to strike the references from their minds as if they had not heard them. We must assume that the jury heeded his instructions. *State v. Robbins*, 287 N.C. 483, 488, 214 S.E. 2d 756, 760 (1975), *modified on other grounds*, 428 U.S. 903, 96 S.Ct. 3208, 49 L.Ed. 2d 1208 (1976). In any event, Agent Bryant further testified without objection during cross-examination that "I was seeking out drug dealers in Northampton County and I sought Mitch Turner out." Defense counsel thus lost the benefit of his objection when substantially the same evidence was theretofore or thereafter admitted without objection. *State v. Covington*, 290 N.C. 313, 226 S.E. 2d 629 (1976).

[6] The third assignment of error states that the trial court erred by allowing three State rebuttal witnesses to testify to a specific trait of the defendant's character. The defendant placed his character into evidence by calling five witnesses who each testified that his reputation and character were good. In rebuttal, the State called Detective Ellis Squire, Officer H. L. Whittle, and Chief Deputy Sheriff Otis Wheeler. Each witness indicated that they had lived in Northampton County for many years and two of three testified that they knew the defendant for over ten years. When all were asked whether they knew what the defendant's character and reputation was in the community, they all replied, "Yes." Then they were asked:

Q. What is his character and reputation?

[Squires' reply]: Mr. Turner has the reputation of dealing in drugs.

* * * *

[Whittle's reply]: Mr. Turner has the reputation of dealing in drugs.

* * * *

[Wheeler's reply]: He's a known drug dealer.

During and after each reply, defense counsel objected and moved to strike the answer from the record which was denied. The defendant asserts that error was committed in that each witness should have first stated whether the defendant's character was good or bad before he related on what particular vice his reputation was based. We disagree.

In the present case, the "witnesses were asked the required 'preliminary qualifying question,' that is, whether they knew defendant's character and reputation in the community." *State v. Caudle,* 58 N.C. App. 89, 93, 293 S.E. 2d 205, 208 (1982), *cert. denied,* 308 N.C. 545, 304 S.E. 2d 239 (1983). Once their reply was in the affirmative, they were qualified to speak on the subject of the defendant's reputation and character in the community. The rule is that " 'counsel may then ask him to state what it is. This he may do categorically, *i.e.,* simply saying that it is good or bad, without more, or he may, of his own volition, but without suggestion from counsel offering the witness, amplify or qualify his testimony, by adding that it is good for certain virtues or bad for certain vices.' " *Id.* at 93, 293 S.E. 2d at 207. By stating that the defendant had a reputation for dealing in drugs, the witnesses were implying that his reputation was bad. Their statements, therefore, were merely a means to qualify their testimony by directly stating the reason they felt his reputation was in fact bad. Although in a technical sense each witness should have first replied that the defendant's reputation in the community was bad, we hold that the foundations laid for each witness to be a sufficient, though minimal, compliance with the requirements for admission of character evidence.

[7] In addition to this ground the defendant also asserts that it was error to allow Officer H. L. Whittle to testify at all in that he was never listed as a State's witness. The accepted rule is that permitting witnesses whose names were omitted from the list of potential witnesses is a matter within the trial court's discretion. *State v. Davis,* 290 N.C. 511, 534, 227 S.E. 2d 97, 111 (1976). Finding no abuse of discretion we hold the trial court committed no error by allowing Whittle to testify.

[8] The defendant's next assignment of error concerns whether the trial court erred in permitting Agent Cross to testify to what Agent Bryant previously told him about the vegetable material

received from the defendant. Over defense counsel's objection, the trial court allowed Agent Cross to relate what Agent Bryant had told him concerning the 30 April 1982 drug sale. Defense counsel objected on the grounds that there was no evidence in the record from Agent Bryant that he ever told Agent Cross what had happened.

The record shows that when Agent Cross was allowed to testify to what Agent Bryant told him he related a story consistent with the testimony given by Agent Bryant earlier. Agent Cross was in effect merely relating a prior consistent statement made to him by Agent Bryant. "The admissibility of a prior consistent statement of a witness to corroborate his testimony is a long established rule of evidence in this jurisdiction." *State v. Medley*, 295 N.C. 75, 78, 243 S.E. 2d 374, 376 (1978). Thus, if the prior statement in fact corroborates the testimony of the witness, it is admissible. *State v. Patterson*, 288 N.C. 553, 220 S.E. 2d 600 (1975), *modified on other grounds*, 428 U.S. 904, 96 S.Ct. 3211, 49 L.Ed. 2d 1211 (1976). Since this evidence was admitted only to corroborate the manner in which the sale occurred and not as substantive evidence, it is immaterial that Agent Bryant never actually stated during his testimony that he had told Agent Cross that day about the drug buy. Because the account given by Agent Cross is substantially the same as given previously by Agent Bryant, we hold that the court properly allowed the testimony into evidence. Furthermore, besides a slight variation as to whether the defendant actually got in the agent's car to hand over the marijuana, the defendant's testimony corroborated what Agent Bryant and Agent Cross stated as well. *See State v. Medley, supra.* We also hold that the trial court's instruction to the jury to consider the prior statements for the purpose of corroborating Bryant's testimony if they found that the statement did corroborate his trial testimony was proper. *See State v. Detter*, 298 N.C. 604, 260 S.E. 2d 567 (1979).

[9] The defendant further contends that the trial court erred in allowing the State's expert witness, Neal Evans, Jr., in forensic chemistry, to testify to how many nickel bags could be produced from a quarter-pound of marijuana, how many marijuana cigarettes could be rolled from this quantity, and how much would this quantity of marijuana be worth on the street. The defendant objected to this testimony in the first place because the expert

testified that his opinions on these matters were "not the result of anything or any analysis" he did in this particular case like actually rolling the quarter-pound of marijuana into cigarettes. However, Mr. Evans did testify that he had been a forensic chemist with the SBI for over thirteen years, that he had identified marijuana over 10,000 times, and that he had testified as an expert in drug analysis more than 500 times. He also testified that he had "gone out on the street and talked to people about how much marijuana is worth and what it sells for" and that he had dealt with a lot of nickel bags. We hold that he was sufficiently qualified to testify to these matters and to relate the opinions he had formed concerning the marijuana. We recognize the rule that an expert may base his opinion on information not otherwise admissible. 1 Brandis on North Carolina Evidence § 136 (1982).

The defendant also objects to this expert's testimony because it is irrelevant. We hold that since the defendant was charged with the sale of marijuana and the possession of marijuana with intent to sell, the jury was at least entitled to know in terms they could understand how much marijuana the defendant did sell as measured in cigarettes and in money.

The seventh assignment of error concerns the trial court's refusal to allow the defendant to answer questions which the defendant felt would show that the criminal intent to commit the crimes charged did not originate in his mind, an element of entrapment. The first question, "did you ever have an idea of selling any marijuana prior to seeing Raymond and Mr. Bryant?" had been previously answered during direct examination. The defendant stated: "I have never sold any marijuana before. My intentions that night, prior to them coming and knocking at my door, was to do nothing but watch TV."

[10] The second question which was objected to and sustained asked: "On April the thirtieth . . . what were your plans and intentions to do that day prior to Mr. Bryant coming up there?" The defendant's answer as shown by the offer of proof in the record would have been that he "[p]lanned on working the rest of the day." We fail to see how this answer is relevant on the issue of whether the criminal intent to sell marijuana originated in the defendant's mind. Simply stating that he planned to work that day does not prove that when the opportunity to make a mari-

juana sale arose that he was not ready and willing to comply with Bryant's request. We hold that this objection was properly sustained.

The third question in which the trial court prevented the defendant from answering was also sustained on the basis that the question had been previously asked and answered on direct examination. In response to the question asking why the defendant had gotten the marijuana for Bryant, he attempted to reply that he had done it only as a favor for Raymond, a statement he had made twice before.

We hold, therefore, that the trial court properly sustained the objection to these questions.

[11] In his final assignment of error, the defendant contends that the trial court abused his discretion in failing to suspend the prison term and place the defendant on probation for at least one of the two judgments entered against him. The defendant in his brief "concedes that the Trial Judge had the legal right to enter Judgment for the presumptive sentence of two years on the conviction of possession with intent to sell, and for the presumptive term of two years for the sale of marijuana, and to run the sentences consecutively" which the trial court in fact did. He also realizes that G.S. 15A-1340.4(a) makes the decision whether to suspend a prison term and impose probationary supervision a discretionary matter for the trial judge. After a careful review of the record, we hold that there has been no abuse of the trial court's discretion.

No error.

Judges HEDRICK and EAGLES concur.