STATE OF NORTH CAROLINA v. DARRELL KENNY KELLY

No. 7419SC937

(Filed 19 February 1975)

**1. Homicide § 28— self-defense in own home — instructions**

Where defendant's evidence in a homicide case tended to show that the victim refused to leave defendant's home after being requested to do so several times, that defendant was assaulted by the victim, and that defendant shot when the victim started to grab him, the trial court was required to instruct the jury on defendant's right to evict a trespasser from his home and to defend himself and his home from attack.

**2. Trespass § 12— remaining in home after request to leave**

One who remains in a home after being directed to leave is guilty of a wrongful entry and becomes a trespasser even though the original entry was peaceful and authorized, and a householder may use such force as is reasonably necessary to eject him. G.S. 14-126.

**3. Assault and Battery § 8; Homicide § 9— self-defense in own home**

A person in his own home and in defense of himself and his habitat is not required to retreat in the face of a threatened assault, regardless of its character, but is entitled to stand his ground and to repel force with force so as not only to resist but also to overcome the assault.

APPEAL by defendant from *Crissman, Judge.* Judgment entered 26 June 1974, in Superior Court, ROWAN County. Heard in the Court of Appeals 22 January 1975.

Defendant pled not guilty to the charge of first-degree murder of Master Grant, Jr.

According to the State's evidence, on 29 May 1974, defendant and his friend, Billy Wayne Moose, after working the 3:00

p.m. to 11:00 p.m. shift at Cannon Mills in Kannapolis, went to a nearby beer parlor and drank beer for two hours, both taking a six-pack with them as they left the establishment. While walking away, they accepted the offer for an automobile ride from Master Grant, Jr., whom they had not previously known. They rode around for about an hour, all drinking beer, and then they let Moose out of the car at his home in Concord.

Defendant, after being warned of his rights against self-incrimination and signing a written acknowledgment and waiver of counsel, made a statement to law officers on the same morning at about 9:00 a.m. In substance he stated that Grant drove around for another two hours after taking Moose home and then stopped the car and made homosexual advances; the defendant resisted and asked Grant to take him home. They arrived at defendant's home in north Kannapolis about 5:00 a.m. Grant followed defendant into the house, saying he wanted to drink a beer. Defendant's wife was in the home with their small baby but walked out of the house when defendant and Grant came in. Defendant asked Grant two or three times to leave his home, but Grant refused to do so. When Grant went to the bathroom, defendant got a shotgun and shot him as he was coming out of the bathroom. Grant fell to the floor and then got back to his feet; defendant reloaded and shot him again. Defendant ran from the house, sticking his arm through the glass front door and cutting his right forearm. He ran to a nearby store and called the Rowan County Sheriff's Department.

Officers went to the store immediately and found the defent bleeding badly from his right arm. Defendant told the officers the man had broken into his house and he had shot him.

Officers went to the home of the defendant where they found Grant lying on the floor in a pool of blood near the bathroom door. He died from gun wounds of the chest and neck.

Defendant's testimony was different from the statement that he made to officers on the morning of the shooting in that he testified that when he told Grant to leave the house they had an argument and Grant pushed him through the glass door cutting his arm; that he again told Grant to leave the house and Grant refused; that he got the shotgun thinking that Grant would leave if he saw the gun; that when Grant came out of the bathroom, he again asked him to leave and Grant said

"he wasn't going no damn where", and that he shot when Grant, who was unarmed, started to grab him.

The jury returned a verdict of second-degree murder, and the defendant appealed from the judgment imposing imprisonment.

*Attorney General Edmisten by Assistant Attorney General Robert G. Webb for the State.*

*Davis, Ford & Weinhold by Donald L. Weinhold, Jr., and Robert M. Davis for defendant appellant.*

CLARK, Judge.

Though defendant presents several assignments of error, the only one warranting express consideration is the exception to that portion of the charge relating to self-defense.

It is apparent that the charge of the trial court is from "Pattern Jury Instructions", (N.C.P.I. - Crim. 206.10), in which the right of self-defense is made available to the defendant upon the jury finding that a murderous assault, or assault with felonious intent, was made upon him.

[1] It may be conceded that the charge as given would be applicable to a different, and probably usual, factual situation; but in this case the evidence for the defendant tended to show that at the time of the assault, defendant was in his own home; that he was assaulted by the victim; that the victim refused to leave after being requested to do so several times; and that he shot when the victim started to grab him. Under these circumstances, the trial court was required under G.S. 1-180 to declare and explain the law arising from the evidence as it related to the rights of the defendant to evict a trespasser from his home and to defend himself and his home from attack.

[2] One who remains in a home after being directed to leave is guilty of a wrongful entry and becomes a trespasser, even though the original entry was peaceful and authorized, and a householder may use such force as is reasonably necessary to eject him. G.S. 14-126; *State v. Clyburn,* 247 N.C. 455, 101 S.E. 2d 295 (1958); *State v. Chaney,* 9 N.C. App. 731, 177 S.E. 2d 309 (1970) ; and 40 Am. Jur. 2d, Homicide, § 179 (1968).

[3] A person in his own home and in defense of himself and his habitat is not required to retreat in the face of a threatened

assault, *regardless of its character,* but is entitled to stand his ground, to repel force with force, so as not only to resist, but also to overcome the assault. *State v. Spruill,* 225 N.C. 356, 34 S.E. 2d 142 (1945) ; *State v. Walker,* 236 N.C. 742, 73 S.E. 2d 868 (1953) ; *State v. Miller,* 267 N.C. 409, 148 S.E. 2d 279 (1966). Of course, this would not excuse the defendant if he used excessive force in repelling the assault. *State v. Jernigan,* 231 N.C. 338, 56 S.E. 2d 599 (1949) ; *State v. Pettiford,* 239 N.C. 301, 79 S.E. 2d 517 (1954).

For error noted, defendant is entitled to a

New trial.

Chief Judge BROCK and Judge BRITT concur.