STATE OF NORTH CAROLINA v. HOWARD FRANKLIN KING

No. 8019SC514

(Filed 18 November 1980)

1. **Criminal Law § 75.9– in-custody statement – admissibility – failure to make specific findings of fact**

   The trial court did not err in admitting into evidence a statement made by defendant on the way to the police station, although the court failed to make specific findings of fact to support its conclusions, where the evidence on *voir dire* was not conflicting and supported the court's conclusions that the statement was not the result of any custodial interrogation; that defendant made the statement freely and voluntarily without duress, coercion or inducement; that the officer did not question defendant or in any way induce his confession; and that the *Miranda* rule was not applicable to the statement in question.

2. **Homicide § 28– self-defense – instruction – murderous assault – great bodily harm**

   The trial court's instruction that defendant could use reasonable force to defend himself if he reasonably believed that a "murderous assault" was being made upon him was not erroneous where the charge as a whole clearly explained the principle that defendant must have reasonably believed that he needed to save himself from death "or great bodily harm" to establish self-defense.

3. **Homicide § 28.4– defense of habitation – when applicable**

   The defense of habitation is available only to prevent a forcible entry into the habitation and does not apply where one remains in a home after being directed by the owner to leave.

4. **Homicide § 26– second-degree murder – instructions – specific intent – intoxication**

   The trial court's instructions that "the law does not require any specific intent for the defendant to be guilty of the crime of second degree murder or of voluntary manslaughter" and, therefore, "the defendant's intoxication can have no bearing upon your determination of his guilt or innocence of these crimes" constituted a correct statement of the law.

5. **Homicide § 27.1– instructions – absence of malice**

   The trial court's instructions on voluntary manslaughter did not limit the jury to a finding of an absence of malice only if the State failed to prove that defendant acted in the heat of passion or that defendant acted in self-defense.

APPEAL by defendant from *Albright, Judge.* Judgment entered 10 January 1980 in Superior Court, ROWAN County. Heard in the Court of Appeals 10 October 1980.

Defendant appeals from a judgment of imprisonment after a verdict of guilty on the charge of murder in the second degree was returned by the jury. The offense occurred on 22 September 1979; defendant was indicted on 19 November 1979. Defendant pleaded not guilty.

The decedent, George Lee Comer, was thirty-five years old, 5 feet 8 inches tall, and weighed 154 pounds. Defendant, Howard Franklin King, was fifty-nine years old, was 5 feet 4 inches tall, and weighed about 122 pounds. Comer died as a result of a close-range gunshot wound.

The evidence for the state tends to show that during the evening of 21 September and early morning of 22 September 1979, King, Comer, and others were in King's home. A young girl named Beth Santas was in a back room; everyone else had been drinking for some time. No arguments or fights took place while the others were in the house, but King told Comer not to go in the room where Beth was. Some of the guests started to leave. One guest, Linda Morris, saw King with a shotgun pointed in the direction of Comer. She told King not to shoot him; King told her to leave. When Morris got to the car she heard a shot, returned to the house, and saw Comer on the floor. King called the police and an ambulance.

When the police arrived King invited them in and told them he had shot and killed a man. His statement was not in response to any question. A shotgun was in the kitchen. On the way to the station house King made a statement, not in response to any question, that he had shot Comer, who deserved to die. He later made a further statement that Comer had been bothering Beth and that King had told Comer several times to leave her alone. Comer had grabbed King and thrown him across the bed. King told Comer he would have to leave; Comer did not leave, and King got a shotgun. As Comer advanced towards him, King shot him. He meant to kill Comer.

At the close of the state's evidence, defendant moved for dismissal. The motion was denied.

King testified in his own behalf. His testimony tended to show that George Comer had lived at King's house for about a month. Comer did not pay rent. On 21 September 1979 a girl named Beth came to King's place with no place to stay. King

offered to let her stay at his house in exchange for her doing housework. King told Comer several times, not to "mess" with Beth, to leave her alone, but Comer persisted in going to the room she was in and bothering her. Just before the shooting Comer had gone to Beth's room. When King asked Comer to come out, Comer knocked him across a bed. King told Comer to leave the house. King got a shotgun and again told Comer to leave, but Comer did not, and circled around the room. With his hands about his hips, Comer came within four feet of King, who told him to stop. It was rather dark and King couldn't see if Comer had anything in his hands. King was afraid because Comer was bigger and stronger than he, and he had seen Comer carry a knife on other occasions. King had heard Comer threaten to kill his wife on the telephone and make a statement about killing "younguns" at an earlier time. After he shot, King told someone to call the police, then he blacked out and didn't remember much after that.

At the close of all the evidence, defendant made a motion to dismiss, which was denied.

*Attorney General Edmisten, by Assistant Attorney General Daniel C. Oakley, for the State.*

*Robert M. Davis for defendant appellant.*

MARTIN (Harry C.), Judge.

[1] Defendant's first assignment of error is that the trial court erred in admitting into evidence a statement made by King on the way to the station house. He argues that the court committed prejudicial error by failing to find specific facts that support the conclusions of law which allowed King's confession into evidence.

The record reveals that a *voir dire* hearing was conducted, upon defendant's objection to testimony, to determine the admissibility of the statement. Officer Rollins, who had transported King to the station, testified as to the circumstances surrounding King's statement. Defendant offered no evidence at the *voir dire*. The court found the facts "to be as all the. evidence tends to show." The court concluded as a matter of law that the statement was not the result of any custodial interrogation; rather, defendant made the statement freely and volun-

tarily without duress, coercion, or inducement; that the officer did not question defendant nor in any way induce his confession; and that the *Miranda* rule was not applicable to the statement in question.

It is correct that the general rule is that a trial court judge should make findings of fact to show the basis of his rulings concerning the admissibility of a confession. *State v. Silver,* 286 N.C. 709, 213 S.E. 2d 247 (1975); *State v. Moore,* 275 N.C. 141, 166 S.E. 2d 53 (1969). In *State v. Lynch,* 279 N.C. 1, 15, 181 S.E. 2d 561, 570 (1971), the Supreme Court noted that it is "always the better practice for the court to find the facts upon which it concludes any confession is admissible." But where "no conflicting testimony is offered on *voir dire,* it is not error for the judge to admit the confession without making specific findings of fact." *State v. Simmons,* 286 N.C. 681, 692, 213 S.E. 2d 280, 288 (1975), *death pen. vac.,* 428 U.S. 903, 49 L. Ed. 2d 1208 (1976). *Accord, State v. Lynch, supra; State v. Bishop,* 272 N.C. 283, 158 S.E. 2d 511 (1968); *State v. Keith,* 266 N.C. 263, 145 S.E. 2d 841 (1966). Although defendant King later testified that he did not remember what he said going to the police station, that he blacked out, there is no evidence that the confession was involuntary or in any way unconstitutional. Despite the fact that the trial judge's findings are non-specific, there is ample evidence to support his conclusions and ruling which admitted the statement into evidence. This assignment of error is overruled.

**[2]** Defendant's second assignment of error deals with Judge Albright's charge to the jury. Defendant objects to the portion of the instruction regarding self-defense:

> Now, Members of the Jury, the Court further charges you that if the defendant reasonably believed that a murderous assault was being made upon him in his own home, he was not required to retreat, but to stand his ground and use whatever force he reasonably believed to be necessary to save himself from death or great bodily harm. It is for you, the jury, to determine the reasonableness of the defendant's belief from the circumstances as they appeared to him at the time.

Defendant argues that it was error to instruct the jury that defendant could use reasonable force to defend himself if he

reasonably believed that a "murderous assault" was being made upon him because the defense applies to felonious assaults as well as those in which it appears that the assailant had the intent to kill. Defendant relies on the decision in *State v. Mosley*, 213 N.C. 304, 195 S.E. 830 (1938), in which the trial judge charged the jury that "[a] man must in good faith believe he is going to be killed," in order to have the right to use such force as he believes necessary to protect himself. The Supreme Court held it was erroneous to have omitted any reference to "the apprehension of great bodily harm," and ordered a new trial. In the disputed charge in the present case, however, the judge referred to the applicability of the defense with regard to "great bodily harm" in the same sentence, as well as in other portions of the charge. It is a well-familiar rule that "[t]he charge of the court will be construed contextually and segregated portions will not be held prejudicial error when the charge as a whole is free from objection." 4 Strong's N.C. Index 3d Criminal Law § 168 (1976). *Accord, State v. Bailey*, 280 N.C. 264, 185 S.E. 2d 683, *cert. denied*, 409 U.S. 948, 34 L. Ed. 2d 218 (1972); *State v. McWilliams*, 277 N.C. 680, 178 S.E. 2d 476 (1971). The trial judge clearly set out and explained the principle that defendant must have reasonably believed that he needed to save himself from death or great bodily harm to establish self-defense. Defendant's testimony regarding the circumstances at the time of the shooting were summarized. The instruction on self-defense, taken in context and as a whole, was not erroneous.

[3] Defendant contends that Comer became a trespasser when he was told to leave and refused to do so, and that defense of habitation became available to defendant at that time, and implies that the court erred in failing to so instruct the jury. Defendant relies on *State v. Kelly*, 24 N.C. App. 670, 211 S.E. 2d 854 (1975), in which Judge Clark held: "One who remains in a home after being directed to leave is guilty of a wrongful entry and becomes a trespasser, even though the original entry was peaceful and authorized, and a householder may use such force as reasonably necessary to eject him." *Id.* at 672, 211 S.E. 2d at 856. The defendant in *Kelly* was granted a new trial because of the trial court's failure to instruct on defense of habitation, despite a proper charge on self-defense, where the evidence tended to show that defendant had requested deceased to leave several times before shooting him.

The *Kelly* decision has been effectively overruled, however. In *State v. McCombs*, 297 N.C. 151, 253 S.E. 2d 906 (1979), the Supreme Court limited right to an instruction on the defense of habitation to those rare occurrences in which a defendant acts to *prevent* a forcible entry into his home. Justice Branch (now Chief Justice) reviewed the applicable rules of law regarding this defense to distinguish between the defense of habitation and ordinary self-defense, which "has become somewhat blurred due to the varied factual situations in which these defenses arise." *Id.* at 154, 253 S.E. 2d at 909. He concluded that defense of habitation is available only "to *prevent* a forcible entry into the habitation under such circumstances . . . that the occupant reasonably apprehends death or great bodily harm to himself or other occupants at the hands of the assailant or believes that the assailant intends to commit a felony." *Id.* at 156-57, 253 S.E. 2d at 910.

> Once the assailant has gained entry, however, the usual rules of self-defense replace the rules governing defense of habitation, with the exception that there is no duty to retreat. . . .
>
> . . . [I]t is well settled that a person is entitled to defend his property by the use of reasonable force, subject to the qualification that, in the absence of a felonious use of force on the part of the aggressor, human life must not be endangered or great bodily harm inflicted. [Citations omitted.] Likewise, when a trespasser invades the premises of another, the latter has the right to remove him, and the law requires that he should first request him to leave, and if he does not do so, he should lay his hands gently upon him, and if he resists, he may use sufficient force to remove him, taking care, however, to use no more force than is necessary to accomplish that object. [Citation omitted.] Should we extend the availability of the defense of habitation to cover *any* invasion of the home, every occupant who kills a person present in his home without authorization would be entitled to an instruction on defense of habitation. Such extension is both unwarranted and unnecessary.

*Id.* at 157-58, 253 S.E. 2d at 910-11.

Under the rule of *McCombs*, it is clear that defendant King was not entitled to an instruction on the defense of habitation. That assignment of error is overruled.

**[4]** Defendant also excepts to the charge as it pertains to specific intent, as related to defendant's evidence of his intoxication at the time of the shooting:

> Now, Members of the Jury, the Court further charges you that there is evidence which tends to show that the defendant was intoxicated at the time of the crime alleged in this case. Now, the law does not require any specific intent for the defendant to be guilty of the crime of second degree murder or of voluntary manslaughter. Thus, the defendant's intoxication can have no bearing upon your determination of his guilt or innocence of these crimes.

The disputed charge is a correct statement of the law. While intoxication may negate the specific intents of premeditation and deliberation necessary to prove first degree murder, it is not a defense to second degree murder. *State v. Couch*, 35 N.C. App. 202, 241 S.E. 2d 105 (1978). *See also State v. McLaughlin*, 286 N.C. 597, 213 S.E. 2d 238 (1975), *death pen. vac.*, 428 U.S. 903, 49 L. Ed. 2d 1208 (1976). Defendant's argument that the charge implied that the jury need not find any intent to shoot the victim is entirely without merit. That portion of the charge clearly relates only to specific intent, not to the general intent required of second degree murder. The trial judge previously had set out the elements necessary to prove second degree murder, and summarized those elements again immediately following the excepted-to portion of the charge. The exception is overruled.

**[5]** Defendant's final argument concerns the instruction on voluntary manslaughter:

> If you do not find the defendant guilty of second degree murder, you must consider whether he is guilty of voluntary manslaughter. If you find from the evidence and beyond a reasonable doubt that on or about September twenty-second, 1979 Howard Franklin King, intentionally and without justification or excuse shot George Lee Comer with a four/ten gauge shotgun, thereby proximately causing George Lee Comer's death, but that the state has failed

to satisfy you beyond a reasonable doubt that the defendant acted with malice because it has failed to satisfy you beyond a reasonable doubt that Howard Franklin King did not act in the heat of passion upon adequate provocation or because it has failed to satisfy you beyond a reasonable doubt that Howard Franklin King did not act in self-defense, but the state has proved beyond a reasonable doubt that Howard Franklin King used excessive force in his self-defense or was the aggressor, although without murderous intent about bringing on the dispute with George Lee Comer, it would be your duty to return a verdict of guilty of voluntary manslaughter. However, if you do not so find or if you have a reasonable doubt as to one or more of these things, it would be your duty to return a verdict of not guilty.

Defendant contends that the jury was limited in its determination of whether the state had proved malice to two situations: failure to prove defendant did not act in the heat of passion, and failure to prove defendant did not act in self-defense.

Earlier in the charge the judge had properly defined voluntary manslaughter as "the unlawful killing of a human being without malice and without premeditation." *State v. Fleming*, 296 N.C. 559, 251 S.E. 2d 430 (1979); *State v. Benge*, 272 N.C. 261, 158 S.E. 2d 70 (1967). He then fully and correctly explained malice. N.C.P.I. — Crim. 206.10. The burden of proving malice was placed upon the state. In the objected-to portion of the charge, the jury's responsibility for determining whether the state had proved each element of the offenses was correctly stated. It does not appear the jury would have been confused or misled. The assignment of error is overruled.

Defendant received a fair trial free of prejudicial error.

No error.

Judges ARNOLD and HILL concur.