STATE OF NORTH CAROLINA v. VANCE CLEGG

No. COA99-1554

(Filed 6 February 2001)

1. **Bail and Pretrial Release— domestic violence—unconstitutional detention—effect on superseding charges**

The statute permitting detention of a defendant arrested for domestic violence for a period of up to 48 hours to await a hearing before a judge on the conditions of pretrial release, N.C.G.S. § 15A-534.1(b), was unconstitutionally applied to defendant in violation of procedural due process as to the original charge of assault on a female where defendant was not taken before a judge until Monday afternoon some 39 hours after he was arrested although judges were available earlier in the day. However, defendant's unconstitutional detention did not entitle him to dismissal of a superseding indictment charging him with assault with a deadly weapon inflicting serious injury and assault inflicting serious bodily injury because: (1) the defendant's original assault on a female charge was dismissed by the State; (2) the State has a compelling interest in the superseding felony assault charges when the victim's injuries were more serious than had been originally suspected; and (3) defendant has failed to prove he was irreparably prejudiced in the prosecution of the superseding charges by his unconstitutional detention.

2. **Criminal Law— self-defense—whether someone was aggressor—jury inquiry—additional instruction**

The trial court did not err in a prosecution for assault with a deadly weapon inflicting serious injury and assault inflicting serious bodily injury by responding to a jury question concerning whether someone was an aggressor for purposes of the self-defense rule and by giving an additional instruction based on the

jury's inquiry as contemplated by N.C.G.S. § 15A-1234(a), because: (1) defendant has not demonstrated that he was prejudiced by the trial court's failure to allow him an opportunity to be heard; (2) defendant's concession that the court's answer to the jury's inquiry was correct shows there was no prejudice in the trial court's response; and (3) any prejudice resulting from the trial court's answer, if at all, was suffered by the State.

**3. Criminal Law— requested jury instruction—ability to evict trespassers—adequate self-defense instruction**

The trial court did not abuse its discretion in a prosecution for assault with a deadly weapon inflicting serious injury and assault inflicting serious bodily injury by denying defendant's request for an additional instruction on the ability to evict trespassers, because: (1) there was no jury confusion since the trial court instructed on self-defense concerning whether defendant could be an aggressor, and not on trespass or the ability to evict trespassers; and (2) the evidence did not warrant an instruction on the ability to evict trespassers when defendant used excessive force.

Appeal by defendant from judgment entered 29 April 1999 by Judge Robert H. Hobgood in Superior Court, Durham County. Heard in the Court of Appeals 9 November 2000.

*Attorney General Michael F. Easley, by Assistant Attorney General Donald R. Esposito, Jr., for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Anne M. Gomez, for defendant-appellant.*

TIMMONS-GOODSON, Judge.

Vance Clegg ("defendant") was convicted of assault inflicting serious bodily injury and assault inflicting serious injury. The trial court arrested judgment for the assault inflicting serious injury conviction. The court sentenced defendant to a term of nineteen to twenty-three months imprisonment. Defendant now appeals.

The State's evidence at trial tended to show the following: Defendant and his girlfriend Jacquetta Sanders ("Sanders") had been dating for approximately one year. While defendant and Sanders were watching television in defendant's bedroom, an argument developed. Defendant locked the front door and punched Sanders in the face. As

Sanders fell to the floor, defendant continued to strike her. Sanders then hit defendant in the face with a shoe, and at some point defendant hit Sanders with that same shoe. Defendant further struck Sanders on the side of her head with a "fake tree," picked up a glass ashtray from a table in the living room, and hit her about her face and head with the ashtray. Defendant threw the ashtray at Sanders. As Sanders attempted to block the ashtray with her hand, the ashtray shattered.

Defendant asked Sanders to leave, at which time she left the residence and subsequently sought medical treatment at a local hospital. Sanders testified at trial that the actual assault occurred in the early morning hours of 28 February 1998.

Medical records disclosed that upon being seen at the hospital, Sanders complained of pain and swelling to her lip, and difficulty moving her left hand and wrist. An examination revealed no significant trauma or injury to Sanders' teeth and mid-face. Sanders reported that the injury to her wrist was the result of her boyfriend throwing an ashtray at her.

As a result of her injuries, Sanders had surgery to correct cut tendons in her left hand. Dr. Lawrence Levine, the surgeon who performed the procedure, testified that the injury to the tendons could have been caused by an ashtray and that as a result of the injury, Sanders suffered impaired functioning to her left hand. Sanders' hospital bills totaled approximately $16,000.

In addition to her testimony concerning the 28 February incident, Sanders testified that two or three days before the incident, as she was leaving defendant's house in her car, defendant grabbed her by the hair, pulled her into his house, punched and kicked her about the head, and banged her head against the floor. Sanders stated that as a result, she sustained bruises and swelling on her back and face, a black eye, and a knot on her forehead. Sanders did not seek medical treatment for these injuries.

Durham police officers R.D. Miller ("Miller") and J.A. Carlett ("Carlett") interviewed Sanders concerning the 28 February incident. Based on Sanders' recount of that incident, Officer Miller obtained a warrant for defendant's arrest.

Defendant testified to a very different version of the facts. According to defendant, Sanders picked him up from work on 27 February, and while the couple were en route to his home, he

STATE v. CLEGG

[142 N.C. App. 35 (2001)]

received a page. After arriving at his house, defendant continued to receive pages, but he did not answer them. Sanders became angered by the pages, because she felt that they were contacts from another woman. Defendant testified that Sanders then became "shrill" and "real loud." Sanders further began cursing and poking defendant in the head. Defendant twice requested that Sanders leave, but she continued to "fuss and cuss."

Defendant further testified that he took Sanders by the arm, "escort[ed]" her out of the bedroom toward the front door, and told her their relationship was over. Sanders continued to curse and scream. As defendant attempted to remove Sanders from the house, she grabbed defendant's box cutter, partially opened it, and approached him with it. Defendant attempted to block Sanders and move out of her reach. Defendant testified that the box cutter's blade was fairly dull. Defendant stated that while Sanders continued to approach him with the box cutter, he threw an ashtray at her "to get the box cutter out of her hand" and "to defend [him]self and [his] home after [he] asked her to leave." Defendant further testified that he was scared Sanders would "really hurt" him or kill him with the box cutter. Defendant stated that he did not hit Sanders with a shoe or "fake tree." Sanders left after the ashtray hit her hand.

Defendant testified that after the encounter, he had knife cuts on his arms, his sweater was bloody, and he was "bleeding real bad." Defendant noted that he visited the emergency room because the swelling in his arm became so painful, he "couldn't take it no more." Defendant's mother, Geraldine Peace ("Peace"), testified that when she saw defendant after the incident, his arm and knuckles were bloody. Peace further testified that defendant told her shortly after the incident, that he and Sanders had gotten into a fight and he threw an ashtray at Sanders to prevent her from cutting him. Peace also stated that her son and Sanders had a good relationship prior to the 28 February incident and that she had never seen them act violently toward each other.

Defendant's main complaint when being seen at the emergency room were multiple abrasions and lacerations on his left hand. Defendant had fifteen to twenty minor lacerations on his left forearm and a deeper cut on his left hand, which required sutures. Dr. Peter Brady ("Dr. Brady"), who attended to defendant's injuries following the 28 February incident, testified that defendant's injuries could have been caused by a box cutter. Dr. Brady further testified that the shallowness of the wounds on defendant's arm might be due to a dull

blade, a blade that was not fully extended, or the thick clothing worn by defendant.

Peace testified that after she took defendant to the emergency room, she and defendant visited the magistrate's office to swear out a warrant against Sanders. However, defendant was arrested before he could take any action.

---

[1] We first address defendant's contention that the trial court erred in denying his motion to dismiss the charges against him on the grounds that North Carolina General Statutes section 15A-534.1(b) was unconstitutionally applied to him. On a motion by defendant, the trial court "must dismiss the charges stated in a criminal pleading if it determines that . . . [t]he defendant's constitutional rights have been flagrantly violated and there is such irreparable prejudice to the defendant's preparation of his case that there is no remedy but to dismiss the prosecution." N.C. Gen. Stat. § 15A-954(a)(4) (1999). "A motion to dismiss under section 15A-954(a)(4) is to be granted only sparingly." *State v. Roberts,* 135 N.C. App. 690, 695, 522 S.E.2d 130, 133 (1999) (citation omitted), *disc. review denied,* 351 N.C. 367, 543 S.E.2d 142 (2000).

Defendant was originally arrested for assault on a female on Saturday, 28 February 1998, and placed in custody around 7:00 p.m. Defendant was denied bond by a magistrate, who noted on defendant's "Release Order" to "[h]old 48 hours, must bring before a judge/magistrate for bond hearing prior to 48 hours of being released[.]" The magistrate also wrote "domestic violence" on the order. On Monday, 2 March 1998, Durham County District Court convened at 9:00 a.m. and Durham County Superior Court convened at 10:00 a.m. Defendant was taken to district court at approximately 2:00 p.m., and sometime between 2:00 p.m. and 5:00 p.m., defendant was given a $500 secured bond.

The State determined that Sanders' injuries were more serious than originally surmised. On 25 March 1998, the State dismissed defendant's assault on a female charge and arrested defendant for assault with a deadly weapon inflicting serious injury. Based on that charge, defendant's secured bond was set at $500. Defendant was subsequently indicted for assault with a deadly weapon inflicting serious injury and assault inflicting serious bodily injury.

Defendant moved to dismiss the charges against him, relying exclusively on *State v. Thompson,* 349 N.C. 483, 508 S.E.2d 277

(1998), a case announced after the original assault on a female charge was dismissed. Following a hearing, the trial court denied defendant's motion. The court found as fact that although there were several district and superior court judges available before defendant was brought to court, "defendant spent almost 48 hours, approximately 39 hours including two nights in jail without bond." The court therefore found that defendant was not brought to court at the first available opportunity.

The court concluded that based on the magistrate's order and the delay in bringing defendant before a judge or magistrate, defendant was unconstitutionally detained under section 15A-534.1. The trial court refused, however, to dismiss defendant's current assault charges, because "[t]he defendant's original 'domestic violence charge' was dismissed by the [State] and the [State] has a compelling interest in the superceding felony indictments."

The court further found:

> [The superceding assault] charges came about after the district attorney's office discovered the victim allegedly was more seriously injured than had been originally suspected, and who allegedly had incurred some $17,000 in medical bills. . . . Presumably, under defendant's theory expounded to the Court, should the victim incur . . . complications and die, the [State] would be precluded from seeking a murder indictment against [him].

Defendant contends on appeal that the court was correct in finding that section 15A-534.1 was unconstitutionally applied to him in accordance with *Thompson*. We agree.

Section 15A-534.1 provides, in pertinent part:

> (a) In all cases in which the defendant is charged with assault on or communicating a threat to a spouse or former spouse or a person with whom the defendant lives or has lived as if married, with domestic criminal trespass, or with violation of an order entered pursuant to Chapter 50B, Domestic Violence, of the General Statutes, the judicial official who determines the conditions of pretrial release shall be a judge, . . . .
>
> . . . .
>
> (b) A defendant may be retained in custody not more than 48 hours from the time of arrest without a determination being made

under this section by a judge. If a judge has not acted pursuant to this section within 48 hours of arrest, the magistrate shall act under the provisions of this section.

N.C. Gen. Stat. § 15A-534.1(a), (b) (1999).

In *Thompson*, 349 N.C. 483, 508 S.E.2d 277, the defendant was arrested on three charges, one of which was a domestic violence charge. No evidence was presented indicating that the victim and the defendant were in a domestic partner relationship. On the defendant's release order, instead of authorizing defendant's release pending trial, the magistrate "denied bond, designated defendant as a 'Domestic violence' arrestee, and ordered him sent to jail." *Id.* at 489, 508 S.E.2d at 280. The defendant's commitment order did not authorize his release for a bond hearing until forty-eight hours later. Defendant was arrested on a Saturday.

Although two superior court and two district court judges were available Monday morning, the defendant's bond hearing was held on Monday afternoon. Thus, the "[d]efendant was not brought before a judge upon the opening of court on Monday morning. He, instead, remained in jail until Monday afternoon, almost forty-eight hours after his arrest." *Id.* at 497, 508 S.E.2d at 285-86.

The *Thompson* defendant argued on appeal that section 15A-534.1(b) was facially unconstitutional and unconstitutionally applied to him in violation of procedural due process, substantive due process, and the Double Jeopardy Clause of the United States Constitution. The Court rejected the argument that section 15A-534.1(b) was unconstitutional on its face. *Id.* at 496, 508 S.E.2d at 285. However, the Court agreed with the defendant that the statute was unconstitutional as applied, concluding:

Under these discrete facts, we agree with defendant that the magistrate's order automatically detaining him without a hearing until well into the afternoon, while available judges spent several hours conducting other business, violated his procedural due process rights to a timely pretrial-release hearing under N.C.G.S. § 15A-534.1(a).

*Id.* at 498, 508 S.E.2d at 286. The Court further concluded, "Because defendant did not obtain his hearing before a judge regarding his bail and conditions of release 'as soon as [was] reasonably feasible,' defendant was detained longer than necessary to serve the State's interest in having a judge, rather than a magistrate, determine the

conditions of his pretrial release." *Id.* at 502, 508 S.E.2d at 289 (alteration in the original) (citation omitted).

The *Thompson* court made it clear that in determining whether section 15A-534.1 is unconstitutionally applied, courts should analyze the particular circumstances of each case. *Id.* at 498, 508 S.E.2d at 286. The Court further noted that it was disposing of the case "solely upon procedural due process grounds." *Id.* at 503, 508 S.E.2d at 289.

We find *Thompson* on all fours with the circumstances surrounding defendant's pretrial detention for the assault on a female charge. Defendant's release order specified that he was to be held forty-eight hours and brought before the court prior to that time. Despite the availability of judges earlier in the day, defendant was not taken in front of a judge until sometime between 2:00 p.m. and 5:00 p.m., approximately thirty-nine hours after he was placed in custody. We conclude that under *Thompson,* this delay was unreasonable. As such, "defendant was not given an opportunity to be heard 'at a meaningful time and in a meaningful manner,' and the application of N.C.G.S. § 15A-534.1(b) violated his procedural due process rights." *Id.* at 502, 508 S.E.2d at 289 (citation omitted).

Furthermore, we reject the State's contention that the trial court should not have applied *Thompson* retroactively. Our appellate courts have applied the analysis of *Thompson* in at least three cases where the defendants were arrested prior to the *Thompson* decision. *See, e.g., State v. Malette,* 350 N.C. 52, 509 S.E.2d 776 (1999) (defendant arrested on 3 December 1995); *State v. Gilbert,* 139 N.C. App. 657, 535 S.E.2d 94 (2000) (defendant arrested on 30 October 1997); *State v. Jenkins,* 137 N.C. App. 367, 527 S.E.2d 672 (defendant arrested on 8 May 1998), *disc. review denied,* 352 N.C. 153, 544 S.E.2d 234 (2000). Accordingly, we conclude that the court correctly applied *Thompson,* finding that defendant's procedural due process rights were violated by his detention for the now dismissed assault charge.

Although we find defendant was unconstitutionally detained in connection with the original charge, defendant must further demonstrate that the violation of his constitutional procedural due process rights in relation to the dismissed charge irreparably prejudiced the present case. N.C. Gen. Stat. § 15A-954(a)(4). Defendant asserts on appeal, as he did below, that sound policy dictates that the superceding indictment should have been dismissed because "the State should

not be rewarded for failing to initially bring the correct charges." Defendant also contends, "[T]o hold otherwise would encourage the State to bypass *Thompson* by holding 'domestic violence' defendants in custody and bring new charges based on the same conduct." Such practices, defendant argues, violate due process as guaranteed by our State and United States Constitutions. We are not so persuaded.

Defendant's argument, albeit novel and creative, is not supported by any authority, *cf. State v. Thompson*, 110 N.C. App. 217, 429 S.E.2d 590 (1993) (holding that where appellant fails to cite authority in support of an argument, the assignment of error upon which that argument is based will be deemed abandoned), nor do we find that it has merit in relation to the present case. No misconduct can be imputed to the State, because it could not have known that our Supreme Court would later render the application of section 15A-534.1 unconstitutional. Furthermore, the State did not dismiss the assault on a female charge and subsequently file different, more severe charges against defendant to avoid the consequences of an unconstitutional pretrial detention. Rather, as found by the trial court, the State's actions were based on information that Sanders' injuries were more serious than originally thought. Defendant has therefore failed to prove he was irreparably prejudiced in the prosecution of the superceding charges by his unconstitutional detention.

Aside from his reliance on *Thompson*, defendant does not argue that the violation of his rights in relation to the dismissed charge had any unconstitutional consequence to or otherwise affected his prosecution on the superceding charges. Accordingly, we find no error in the trial court's refusal to dismiss the superceding charges.

**[2]** We next address defendant's contention that the trial court erred in responding to a jury question and further erred in refusing to give an additional instruction based on the jury's inquiry.

The trial court instructed the jury on self-defense and the duty to retreat:

> [S]elf-defense is an excuse only if the defendant himself was not the aggressor. If he voluntarily entered into the fight, he was the aggressor unless he thereafter attempted to abandon the fight and gave notice to his opponent that he was doing so.
>
> . . . When a person who is free from fault bringing on a difficulty is attacked in his own home, the law imposes on him no duty to retreat before he can justify his fighting in self-defense

regardless of the character of the assault, but is entitled to stand his ground, to repel force with force and to increase his force so as not only to resist, but also to overcome the assault and secure himself from all harm. This, of course, would not excuse the defendant if he used excessive force in repelling the attack and overcoming his adversary.

If you found Vance Clegg was not the aggressor in this incident and that he was in his own home at the time the incident occurred, the law allows him to stand his ground and defend himself from the assault being made upon him, regardless of the nature of the assault. However, he would not be excused if he used excessive force.

After the jury began deliberations, the trial court brought the jury members back into the courtroom and asked them whether they had reached a verdict. The foreperson stated that they had not but did have a question. The foreperson asked, "For purposes of deciding whether someone is aggressive or the aggressor, is asking to leave the house and refusing adequate to be deemed the aggressor?" The trial court answered, "No," and excused the jury. The court then asked both the State and defendant whether they had "any objections, corrections or additions of [sic] the answers to the question posed by the jury?" Both answered, "None."

Upon reflection, defendant informed the court that he had an objection to the court's answer to the jury's question and requested additional jury instructions on the ability to evict trespassers. The court denied the objection. Defendant further objected, arguing that the jury's question was ambiguous. The court overruled the objection, noting that it had already instructed the jury on self-defense and in its opinion, it "ha[d] adequately instructed [the jury] on [the] available defense under the law."

Defendant argues on appeal that the jury's question was ambiguous, in that it could have been asking (1) "whether the fact that Sanders was asked to leave and she refused was sufficient to deem *her* an aggressor," or (2) "whether the fact that defendant asked Sanders to leave and she refused was sufficient to deem *defendant* an aggressor." Defendant argues that the court's response constituted an additional instruction, and therefore neither he nor the State were not afforded an opportunity to discuss the question in violation of section 15A-1234(c) of our General Statutes. Defendant further argues that

the trial court's answer to the jury's question was ambiguous and therefore prejudicial. We disagree with defendant's arguments.

A trial court may give "additional instructions" to respond to jury inquiries, to correct an erroneous instruction, to clarify an ambiguous instruction, or to instruct the jury on law which should have been included in the original instructions. N.C. Gen. Stat. § 15A-1234(a) (1999).

> Before the judge gives additional instructions, he must inform the parties generally of the instructions he intends to give and afford them an opportunity to be heard. The parties upon request must be permitted additional argument to the jury if the additional instructions change, by restriction or enlargement, the permissible verdicts of the jury. Otherwise, the allowance of additional argument is within the discretion of the judge.

N.C.G.S. § 15A-1234(c).

Assuming, *arguendo*, that the trial court's response to the jury's inquiry was an additional instruction as contemplated by section 15A-1234(a), defendant has not demonstrated that he was prejudiced by the court's failure to allow him an opportunity to be heard. Defendant concedes in his brief that if the jury was asking "whether the fact that Sanders was asked to leave and she refused was sufficient to deem *her* an aggressor," the court's response in the negative was "probably correct." Given defendant's concession that the court's answer to this interpretation of the jury's inquiry was correct, we find no prejudice in the court's response. *Cf. State v. Rich*, 132 N.C. App. 440, 512 S.E.2d 441 (1999) (finding that where additional instructions were correct, different outcome was not likely and therefore defendant suffered no prejudice), *aff'd*, 351 N.C. 386, 527 S.E.2d 299 (2000).

Defendant argues that if the jury was asking "whether the fact that defendant asked Sanders to leave and she refused was sufficient to deem *defendant* an aggressor," the court's response was "incorrect or misleading." We also find no prejudice in the court's response to this interpretation of the inquiry because the response, right or wrong, was beneficial to defendant. From this response, a jury would tend to infer that defendant was not an aggressor under those circumstances, and according to the court's self-defense instruction, he was entitled to defend himself against an unprovoked attack. Thus, the prejudice resulting from the court's answer, if at all, was suffered by the State. Accordingly, this argument fails.

**[3]** Defendant next argues that the trial court should have granted his request for an instruction on the ability to evict trespassers. Defendant asserts that the jury's question indicated their confusion as to whether defendant could legally evict Sanders if she were a trespasser. Defendant contends that the evidence was sufficient to warrant an instruction on his ability to evict trespassers, and such an instruction would have clarified the jury's confusion. With this argument, we also disagree.

It is within the trial court's discretion to determine whether additional instructions are needed to dispel jury confusion. *State v. Prevette*, 317 N.C. 148, 345 S.E.2d 159 (1986). We therefore apply an abuse of discretion standard of review in determining whether the court erred in refusing to give defendant's requested instruction.

First, it is illogical for the court to assume that the jury's question demonstrated their confusion concerning whether Sanders was a trespasser or whether defendant had a right to use force in evicting her, because the court did not instruct the jury on trespass or the ability to evict trespassers. Rather, in the context of the court's self-defense instruction, the jury was more than likely asking whether defendant could be considered an aggressor, in that he started a fight by asking Sanders to leave. *See cf. State v. Dial*, 38 N.C. App. 529, 533, 248 S.E.2d 366, 368 (1978) (citation omitted) (Jury instructions "must be read contextually, and an excerpt will not be held prejudicial if a reading of the instructions in their entirety leaves no reasonable ground to believe that the jury was misled.")

Second, assuming defendant's request was timely, the evidence did not warrant an instruction on the ability to evict trespassers. Where "a defendant requests an instruction which is supported by the evidence and is a correct statement of the law, the trial court must give the instruction, at least in substance." *State v. Garner*, 340 N.C. 573, 594, 459 S.E.2d 718, 729 (1995) (citations omitted). "When determining whether the evidence is sufficient to entitle a defendant to jury instructions . . . , courts must consider the evidence in the light most favorable to [the] defendant." *State v. Mash*, 323 N.C. 339, 348, 372 S.E.2d 532, 537 (1988) (citations omitted).

It is a well-established principle:

[W]hen a trespasser invades the premises of another, the latter has the right to remove him, and the law requires that he should first request him to leave, and if he does not do so, he should lay

his hands gently upon him, and if he resists, he may use sufficient force to remove him, taking care, however, to use no more force than is necessary to accomplish that object.

*State v. McCombs*, 297 N.C. 151, 157, 253 S.E.2d 906, 911 (1979) (citations omitted). However, a person may not use deadly force or force likely to cause great bodily harm against a trespasser already in his home. *See State v. King*, 49 N.C. App. 499, 504, 272 S.E.2d 26, 30 (1980) (discussing trespass in case concerning defense of habitation instruction).

Assuming that the jury accepted defendant's account of the evidence as true, Sanders may have at some point become a trespasser. However, the evidence establishes that defendant used more force than was necessary to evict Sanders. According to his own testimony, defendant threw the glass ashtray at Sanders. Sanders testified that the ashtray was six inches across and three to four inches thick. Given the nature of the ashtray and Sanders' resulting injuries, the evidence demonstrated that defendant used force at least great enough to cause serious bodily injury. Because he was not allowed to use such force in evicting a trespasser, the evidence did not support defendant's requested instruction.

Furthermore, defendant himself never testified that he threw the ashtray in an effort to evict Sanders. Instead, defendant testified that he was attempting "to get the box cutter out of [Sanders'] hand" and "to *defend* [him]self and [his] home after [he] asked her to leave." (Emphasis added.) Peace likewise testified that defendant told her shortly after the incident that he threw the ashtray in an effort to prevent Sanders from cutting him. Based on this and other testimony, we conclude the court "adequately instructed [the jury] on [the] available defense under the law[,]" self-defense. Therefore, we find no abuse of discretion in the court's refusal to give an instruction on defendant's ability to evict trespassers.

Finally, defendant assigns as error the admission of evidence concerning a prior incident between him and Sanders for the purpose of demonstrating defendant's intent in relation to the 28 February incident. We have reviewed defendant's argument, and find it to be wholly without merit.

In our judgment, defendant received a fair trial, free from prejudicial error.

McCALLUM v. N.C. COOP. EXTENSION SERV.

[142 N.C. App. 48 (2001)]

No error.

Judges MARTIN and EDMUNDS concur.

Judge EDMUNDS concurred prior to 31 December 2000.